MAIN STREET HOTEL COMPANY, OF HORTON, v. THE HORTON HARDWARE COMPANY *et al.*

No. 8003.

1. MECHANICS' LIENS—*Enforcement.*  Where subcontractors performed labor and furnished material in 1888 and 1889, so as to be entitled to mechanics' liens under the act of 1872, they had a right to file their lien statements, give notice thereof, and commence their actions thereon under the act of 1889, which repealed the former act.

2. ——— *Abandonment of Contract—Rights of Subcontractors.*  Where, after the act of 1889 took effect, the contractor abandoned the work with the knowledge of the owner, which was withheld from the subcontractors, whose contracts were incomplete, the latter had the right to file their lien statements within 60 days after the abandonment or doing the last work or furnishing the last item of material before notice of such abandonment.

3. SURETY, *When not Liable.*  A surety on a contractor's bond cannot be held liable thereon when the failure of performance of the contract is caused by the default of the obligee.

4. —————— *Limit of Lien.*  Subcontractors cannot obtain liens in excess of the amount which the owner has agreed to pay the original contractor.

5. —————— *Bond—Lien, not Divested.*  The giving of a bond under section 13, chapter 168, acts of 1889, does not operate to divest a lien the right to which accrued under the act of 1872.

## *Error from Brown District Court.*

ON June 15, 1888, E. S. Malone contracted with the Main Street Hotel Company, a corporation, to furnish all material for and construct and complete a three-story brick hotel building, with stone basement, on lots 39, 40, and 41, in block 10, in the original town of Horton, according to certain plans and specifications prepared by Eckel & Mann, architects, for the sum of $17,585.80, one-fourth of said amount to be paid when the basement walls were completed, one-fourth on completion of the roof, one-fourth when the plastering was done, and the remainder when the building was fully completed and accepted by said architects ; and it was further agreed that Malone and his bondsmen should not be liable for any delays caused by the failure of the hotel company to make said payments.   On the same day, Malone, as principal, and Hugh Caughey, as surety, entered into a bond to the hotel company in the sum of $5,000 for the performance of Malone's part of the contract. The basement walls were completed by August 27, 1888, when the first payment was made, amounting to $4,396.45.   The roof was completed November 1, 1888, but the second payment was not fully made for want of funds on the part of the hotel company, but partial payments were made, and the work was carried on with a limited number of men.   On January

29—56 KAS.

5, 1889, the plastering was completed with the exception of the halls, which could not be properly plastered until the stairs were completed, and some necessary patching, which could not be done until the building was nearly finished. The third payment was not made for lack of funds. The work was prosecuted with a small force, when the weather was suitable, until June 15, 1889, the president of the hotel company having personally guaranteed the wages of the workmen, who had refused to work unless the payment of their wages every Saturday night was guaranteed. At that time he notified Malone, in the presence of the workmen, that he would not be responsible for the payment of the men thereafter, and thereupon Malone abandoned the work and went to Denver, where he remained some months. Malone did not tell the men to stop work, but on Monday, June 17, upon the personal guaranty of the managers of the hotel company, three carpenters who had been working for Malone on the building continued the work, one of them acting as foreman, and in that capacity signing Malone's name to orders for wages, at the request of the hotel company, and the wages were paid by the company without authority from Malone. On August 28 the hotel company called on Hugh Caughey and notified him that they looked to him to complete the contract; but he refused to have anything further to do with it, and the company proceeded to complete the building, at an expense of $2,286.54, which was as low as it could reasonably be done at that time; but if money had been furnished to Malone before he abandoned the contract he could have completed it for $1,500 in addition to what he had expended. The building was completed in December, 1889.

Under subcontract with Malone, several parties

performed work and furnished material for said building. The Horton Hardware Company, a partnership, commenced furnishing materials July 6, 1888, and continued to do so until June 20, 1889, before they learned of the abandonment of the work by Malone; but the items furnished from June 15 to June 20, inclusive, were insignificant in amount; and, on August 12, 1889, the company filed a mechanic's lien and gave notice thereof. Hugh Caughey furnished material from July 12, 1888, until June 13, 1889, amounting to $5,820.28; and on August 7, 1889, he filed a mechanic's lien and gave notice thereof. Besides the foregoing, he advanced to Malone, for material, labor, etc., $5,108.70, and was reimbursed out of the first payment to the amount of $3,406.84, leaving a balance of $1,701.86, for which Malone gave him an order on the hotel company November 17, 1889, and the hotel company was then owing Malone more than that amount. The order was never returned nor paid by the hotel company. The Ambrose Manufacturing Company contracted for the iron work at $947, and all of the same, except $124 in value, was furnished between August 10, 1888, and September 29, 1888, which Malone partially paid, leaving a balance due on the part furnished of $643.63. The manufacturing company was ready to complete the furnishing of the materials according to contract when called upon by Malone according to their arrangements; but the remaining material was not called for, and, on August 3, 1889, the company filed a lien, and gave notice thereof. John Collins contracted to do the painting and furnish the material for $470. He worked 40 days, his wages being reasonably worth $2.50 per day, and furnished material worth $60, but work was done and material furnished amounting in

value to $20 in August, 1889, before he knew of the abandonment by Malone, the last work being done August 20, 1889 ; and he filed a lien and gave notice thereof October 16, 1889. Malone furnished extra material and work of the value of $315.15. The hotel company paid to him and on his orders $11,046.03, and the total cost of the building up to its abandonment by Malone was $21,090.83, and $2,286.54 thereafter for its completion as hereinbefore stated. The labor and material were in substantial conformity to the contract.

On September 14, 1890, the Horton Hardware Company commenced this action to enforce its mechanic's lien, and the several lien claimants were thereafter brought into court, where they set up their respective claims. On September 27 the hotel company caused to be executed, approved and filed a bond as authorized by section 13, chapter 168, Laws of 1889. The case was referred to Hon. Abijah Wells, as referee, who made a full report, from which the foregoing statement is taken, the facts found being supported by the evidence in all material respects. The referee allowed the respective amounts found to be due for work and material entering into the building, and found that all the claimants except one ( who makes no complaint, and is not a party in this court) were entitled to liens, to be prorated according to the contract price and the actual cost; but held that the lien claimants could not have relief against the real property, and must be remitted to their actions on the bond approved and filed September 27, 1889. The report was confirmed by the court, and judgment rendered in accordance therewith. The hotel company prosecutes error as to the allowance of these several claims for liens, and the lienors have filed

cross-petitions in error complaining of the cutting down of their liens, and of the relieving of the real estate from the burden thereof. The opinion herein was filed February 8, 1896.

*Jas. Falloon*, for plaintiff in error.

*S. L. Ryan*, and *W. I. Stuart*, for defendants in error Caughey and Collins.

*Johnson, Rusk & Stringfellow*, for defendant in error The Ambrose Manufacturing Company.

*Jas. A. Clark*, for defendant in error The Horton Hardware Company.

The opinion of the court was delivered by

MARTIN, C. J. : I. The first point suggested is whether the parties that performed labor and furnished material in the construction of this building under subcontracts while the law of 1872 was in force could, after the repeal of that law, proceed either thereunder or under the act of 1889 to perfect mechanics' liens upon the property. It is provided in chapter 104, General Statutes of 1889, ¶ 6687, which took effect October 31, 1868, that "the repeal of a statute does not . . . affect any right which accrued . . . nor any proceeding commenced under or by virtue of the statute repealed"; and again, "the provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment." A right accrued to these subcontractors under the act of 1872 by performing work and furnishing materials in the erection of the building. ( *Weaver v. Sells*, 10 Kan. 609 ; *Brown v. School District*, 48 id. 709, 711 ; *Nixon v. Cydon Lodge*, ante, p. 298.) Under the act of 1862, a subcontractor was required to file his lien

statement within 60 days after the completion of the building; but under that of 1889 he must file it within 60 days after furnishing the last item of his account. And by the rulings of this court upon the act of 1872, where the work was abandoned either. by the fault of the contractor, the owner, or both, the subcontractor might treat the building as completed, for the purpose of filing a mechanic's lien. (*Shaw v. Stewart*, 43 Kan. 572, 577; *Lumber Co. v. Savings Bank*, 52 id. 410, 414.) The right to the liens accrued under the act of 1872, but the procedure for enforcing them, which included the filing of the lien statements, the giving notice thereof, and the commencement of action thereon, is governed by the act of 1889. (*Nixon v. Cydon Lodge*, supra.) By the act of 1872, the time limited for the commencement of the action to enforce the lien was one year after the completion of the building; but, under the act of 1889, the suit must be brought within one year after the filing of the lien statement, and therefore these statements were not filed too soon, nor the action prematurely commenced.

II. The Ambrose Manufacturing Company did not file its lien until nearly 10 months after the furnishing of the last item of its account, but it stood ready to furnish the remaining materials, amounting to $124 in value, as soon as they should be needed, and in accordance with its agreement with the contractor; and, clearly, it had a right to file its lien statement within 60 days after the abandonment of the contract by Malone, as it could not be expected to furnish the remainder of the materials after that time under its subcontract. The Horton Hardware Company furnished items insignificant in amount from June 15 to June 20, 1889, before it had any knowledge of the

abandonment by Malone; but as the hotel company failed to notify the hardware company of the abandonment and received the benefit of the goods furnished, we think it has no right to complain; and the same remarks apply to the claim of John Collins for painting, a small part of which was done after the abandonment by Malone, but without notice thereof, by reason of the hotel company withholding the information.

III. We think the evidence justified the referee in finding that the hotel company failed to make its payments according to the terms of its contract with Malone, and that this was the principal cause of the abandonment; and as it was provided in the contract that Malone and his bondsmen should not be liable for any delays caused by the failure of the hotel company to make its payments, Hugh Caughey, as surety, was properly relieved from any liability upon the bond, especially as it is found by the referee that the building could have been completed at the contract price by Malone, if payments had been promptly made and the work pushed with a large force; and we see no error in allowing judgment in favor of Hugh Caughey against the hotel company for the *pro rata* amount of the order for $1,701.86.

IV. The lien claimants, in their several cross-petitions in error, complain because they were not allowed the full amount of their claims, but were compelled to prorate, as mentioned in the statement. But subcontractors are bound to take notice of the original contract, and they cannot obtain liens in excess of the amount which the owner has agreed to pay the original contractor. (*Nixon v. Cydon Lodge*, supra; Laws 1872, ch. 141, § 2; Laws 1889, ch. 168, § 3.)

V. The claimants also complain of the ruling of the

referee and the court relieving the real estate from the burden and · remitting them to their several actions on the bond given in pursuance of section 13 of said act of 1889 ; and their position must be sustained, in accordance with the reasoning contained in this opinion. The right to a lien upon the real estate, which accrued under the act of 1872 by performing labor and furnishing materials, was not divested by the giving of a bond as authorized by said section 13 of the subsequent act. ( *Weaver v. Sells*, supra.)

The court below will be directed to modify its judgment so as to allow the *pro rata* amount of the several claims as liens upon the real property. In all other respects the judgment will be affirmed.

All the Justices concurring.