STATE *ex rel.* WEST, *Atty. Gen., et al. v.* McCAFFERTY, *County Treasurer.*

No. 826.   Opinion Filed November 9, 1909.

(105 Pac. 992.)

1.   **STATUTES—Implied Repeal.** Where a section, expressly amendatory to another section of a statute, purports to set out in full all that it is intended to contain, any matter which was in the original section, but not in the amendatory section, is repealed by the omission.

2. **CONSTITUTIONAL LAW—Obligation of Contracts—Tax Ferret —Contract with County—Nature of Agency.** A contract, made under authority of Act May 29, 1908, p. 729, c. 81, art. 9 (Sess. Laws 1907-08), by a board of county commissioners with an individual, to assist the proper officers of the county in the discovery of property not listed for taxation, and to receive as full compensation 25 per cent. of all taxes recovered under said act, does not confer upon the agent a power, coupled with an interest in the subject of the contract, which makes the contract of agency irrevocable.

3. **MANDAMUS—Nature of Act Commanded—Repeal of Statutory Authority—Tax Ferrets.** Where an application was made to this court by an agent. under contract with a board of county commissioners to assist the proper officers of the county in the discovery of property not listed for taxation from 1897 to 1907, inclusive, entered into pursuant to Act May 29, 1908 (Sess. Laws 1907-1908, p. 729, c. 81, art. 9), to mandamus the county treasurer to give certain taxpayers of the county, in whose name it was proposed to list and assess certain property alleged to have been discovered by said agent, the 10 days' notice in writing required by said act, fixing the time and place when and where objections thereto might be made, and where, pending a hearing, said act was repealed by the Act March 8. 1909 (Sess. Laws 1909, p. 626, c. 38, art. 3), to the extent of revoking the authority of said board of county commissioners to employ said agent to assist said officers in the discovery of such property not listed and assessed for taxation prior to November 16. 1907, and also revoking his agency under said contract, held, that all the power of the county treasurer to do and perform the acts sought to be required of him in the business was destroyed by that part of said act repealed, and the mandamus was denied.

4. **MANDAMUS—Discretion of Court—Useless Acts.** Mandamus is not a writ of right, but one resting within the sound judicial discretion of the court, and will not be granted to compel the performance of a useless act.

(Syllabus by the Court.)

Original application for mandamus by the State of Oklahoma, on the relation of Charles West, Attorney General, by the Board of County Commissioners of Oklahoma County, by E. E. Reardon, County Attorney, and by C. H. Pittman, against Charles McCafferty, County Treasurer. Writ denied.

*Charles West,* Atty. Gen., for the State; *E. E. Reardon,* County Atty., for Oklahoma County; *M. Fulton* and *John Adams,* for C. H. Pittman.—Citing: *Hall v. State of Wisconsin,* 103 U. S.

5; *Teacher v. Supt. of Stuben Co.*, 21 Misc. (N. Y.) 271; *People v. Hill*, 8 Colo. 490; *People v. Stell*, 231 Ill. 340; *In re Preston*, 63 Ohio St. 428; *People v. Coler*, 166 N. Y. 144; *Mitchell v. Burlington*, 4 Wall. (U. S.) 270; *Ohio, etc., Co. v. DeBolt*, 16 How. (U. S.) 416; *Newstadt v. Ill. Cent. R. Co.*, 31 Ill. 484; *Southwestern Missouri Lt. Co. v. City of Joplin*, 101 Fed. 23; *Township v. Talcott*, 19 Wall. (U. S.) 666; *Houston, etc., v. State of Texas*, 177 U. S. 66; *Edwards v. Kearzey*, 96 U. S. 601; *Ogden v. Saunders*, 12 Wheat. (U. S.) 213; *Sturges v. Crownshield*, 4 Wheat. (U. S.) 122; *City of Louisville v. R. R. Co.* (Ky.) 63 S. W. 14; *Oliver v. Houghton*, (Tex.) 54 S. W. 940-943; *In re Leland Standford* (Cal.) 45 L. R. A. 788; *Trippet v. Guondike* (Cal.) 8 L. R. A. 1210; *Prorost v. Greneaux*, 19 How. (U. S.) 1; *Alliance Trust Co. v. Multumauh Co.* (Ore.) 63 Pac. 498; *Smith v. Kelley*, 24 Ore. 464.

*Everest, Smith & Campbell, John H. Wright*, and *George A. Matlack* (*Dale & Bierer, Devereux & Hildreth, J. L. Brown*, and *Horace Speed*, of counsel), for respondent.—Citing: *Musgrave v. Railroad Co.*, 50 Miss. 677; *French v. State*, 53 Miss. 651; *Haynes v. State* (Tenn.) 39 Am. Dec. 187; *Missouri v. Walker*, 88 Mo. 279, 125 U. S. 339; *Merrill v. Sherburne*, 1 N. H. 213; Cooley, Const. Lim., 359; *Commw. v. Glover* (Ky.) 116 S. W. 769; *Baker v. City of Utica*, 19 N. Y. 326; 8 Cyc. 944; *Selma B. & L. Ass'n v. Morgan*, 57 Ala. 33; *State v. Brewer*, 64 Ala. 287; *Commw. v. Comm'rs*, 6 Pick. (Mass.) 500; *Williamson v. New Jersey*, 130 U. S. 189; Dwarris on Statutes, 676; *Canal Co. v. City of Chicago*, 14 Ill. 334; *Fitzgerald v. Railroad Co.* (Vt.) 13 L. R. A. 70; *Pott v. Sheboygan*, 25 Wis. 506; *Reed v. Francis*, 33 Kan. 510; *Commw. v. Standard Oil Co.*, 101 Pa. St. 149; *Butler v. Palmer*, 1 Hill (N. Y.) 324; *Gravel Road Co. v. Sheath, Treas.*, 53 Ind. 35.

TURNER, J. This is an original proceeding in mandamus, filed in this court May 6, 1909, by the state of Oklahoma, on the relation of Charles West, Attorney General, the board of county commissioners of Oklahoma county, by E. E. Reardon, county

attorney, and C. H. Pittman, against Charles McCafferty, county treasurer of said county. The petition substantially states that on August 11, 1908, said Pittman was employed and contracted in writing with said board of county commissioners to assist the proper officers of said county in the discovery of property not listed and assessed for taxation, as required by existing laws; that said contract was made pursuant to Act May 29, 1908, c. 81, p. 729, art. 9 (Sess. Laws Okla. 1907-1908); that the same provided that said Pittman should receive the sum of 25 per cent. of all taxes recovered under said act as compensation for his services. A copy of said contract, together with a copy of the minutes and proceedings of said board of county commissioners with relation thereto, are attached as exhibits to the petition. The petition further alleged that under said act it was the duty of said McCafferty, as county treasurer, upon being notified by said Pittman of property omitted from listing and assessment for taxation, to give to the person in whose name it was proposed to assess such property 10 days' notice of his intention so to do, by registered letter addressed to such person at his last-known place of residence, fixing the time and place when objections in writing to such proposed listing and assessment might be made, and that, if it be found that said property had been omitted from taxation, and had not been listed and assessed, to list and assess the same for each year it had been omitted, and charge the same with the tax levy of that year, and enter the same upon the tax rolls for collection, and proceed forthwith to collect the taxes due and payable thereon; that pursuant to said employment he had made examination, investigation, and search to discover any property in said county that had been omitted from assessment for taxation for the years 1897 to 1907, inclusive, and as exhibits filed alleged schedules thereof, showing the names of persons having property omitted from listing and assessment, and the years omitted, and the amount of property omitted for each year, alleging the interest therein of the state and county to be in all $750,000; that said McCafferty, county treasurer, upon the facts as stated having been brought to his knowledge, upon re-

quest, refused and still refuses to give the persons in whose name it is proposed to assess said property said notice required by law, and to take any steps to bring about the proper listing and assessment of said omitted property, or any part thereof, for any of the years named, and fails, neglects, and refuses to do his duty as county treasurer under said act; that plaintiff has no adequate remedy other than the present proceeding, and prays that an alternative writ of mandamus be directed to said McCafferty, as treasurer aforesaid, commanding him to show cause why he should not be compelled to issue said notice and list and assess said property and enter the same upon the tax rolls of said county for the years during which it was so omitted; and that he thereafter be required to forthwith proceed with the collection of said taxes, and for judgment and costs.

An examination of the contract discloses that no consideration appears upon its face, no limit is fixed for its duration, and that it was for the discovery of taxes due the county for the past 10 years, exclusive of the taxes then being collected for the current year.

Responding to the rule, defendant answered, in substance, that the writ should not issue because, he said, (1) there has been no refusal on his part to do any duty enjoined upon him by law; (2) that the act under which plaintiff seeks to compel him to do and perform the things set forth in the writ was not legally passed by the Legislature, and never became a law; (3) that said act is so vague and indefinite as to be incapable of intelligent interpretation, no definite procedure being provided; (4) that said act has, in effect, been repealed as to all property omitted from assessment prior to November 16, 1907.

Plaintiff demurred to the answer, and the main questions necessary for us to determine are whether the act approved May 29, 1908, was repealed in whole or in part by the act approved March 8, 1909 (Laws 1909, p. 626, c. 38, art. 3), and, if so, what effect, if any, said repealing act had on the contract of employment of the relator Pittman and on his right to the peremptory writ.

The former act provides: -

"Section 1. The board of county commissioners of any county in this state may contract with any person or persons to assist the proper officers of the county in the discovery of property not listed and assessed as required by existing laws, and fix the compensation not to exceed twenty-five per cent. of the taxes recovered, under this act. Before listing and assessing the property discovered the county treasurer shall give the person in whose name it is proposed to assess the same, ten days' notice thereof by registered letter, addressed to him at his last-known place of residence, fixing the time and place when objections in writing to such proposed listing and assessment may be made. An appeal may be taken to the county court from the final action of the treasurer within 10 days, by giving notice thereof in writing and filing an appeal bond as in cases appealed from the board of commissioners to the district court.

"Sec. 2. Property that has been omitted from assessment through a series of years, shall be listed and assessed for each year that it has been omitted and charged with the levy for that year.

"Sec. 3. All taxes levied under the provisions of this act, shall become payable immediately and shall be entered upon the tax roll, and shall bear interest and penalties at the same rate as provided by existing laws, and shall become a lien on the property of the person liable for the payment thereof in the same manner and to the same extent as in the case of taxes levied under existing laws.

"Sec. 4. All acts and parts of acts in conflict with this act are hereby repealed.

"Sec. 5. An emergency is hereby declared to exist by reason whereof it is necessary for the preservation of the public peace and safety that this act take effect from and after its passage and approval."

The latter act is entitled "An act to amend chapter 81, article 9, of the Session Laws of Oklahoma 1907-8 relating to the discovery of property not listed, and declaring an emergency." Section 1 of the act provides: "Sections 1 and 2 of article 9 of chapter 81 of the Session Laws of Okla., 1907-1908 are hereby amended as follows." Then follows a re-enactment of said section 1 with "twenty-five," the per cent. of compensation allowed the tax ferret in said act, omitted, and in lieu thereof "fifteen"

per cent. is inserted as the compensation fixed by the repealing act. In lieu of section 2 in the former, the repealing act, section 2, provides:

"Property that has been omitted from assessment since November 16, 1907, shall be listed and assessed for each year that it has been omitted and charged with the levy of that year. Provided, no property shall be assessed for any taxes for any year prior to November 16, 1907."

It is a well-known canon of construction that an act which provides that certain sections of a prior act shall be amended "so as to read as follows" or "as follows" repeals all contained in the sections of the original act not re-enacted. 26 Am. & Eng. Enc. of Law, 735. Or, as stated in the syllabus of *State ex rel. v. Commissioners Duval Co.*, 23 Fla. 483, 3 South. 193:

"Where a section, expressly amendatory of another section of a statute, purports to set out in full all it is intended to contain, any matter which was in the original section, but is not in the amendatory section, is repealed by the omission."

Or, as stated in *Junction City v. Webb*, 44 Kan. 71, 23 Pac. 1073:

"Every enactment is by implication a repeal of all prior laws so far as it is contrary and repugnant thereto although there may be no repealing clause."

Or, as perhaps more aptly stated by the court in the syllabus in *Mayor, etc., of Jersey City v. Jersey City Ry. Co.*, 20 N. J. Eq. 360:

"The rule of construction of statutes is that a provision in a statute inconsistent with a provision in a former statute repeals the first statute *pro tanto*."

In *Pierpont v. Crouch*, 10 Cal. 315, the court laid down the rule thus:

"A statute may be repealed by implication as well as in direct terms, and it is well settled that, where a subsequent act is repugnant to a prior one, the last operates, without any repealing clause, as a repeal of the first; and, where two acts, passed at different times, are not in terms repugnant, yet if it is clearly evident that the last was intended as a revision or substitute of the first, it will repeal the first to the extent in which its provisions are revised and substituted. *Rogers v. Watrous*, 8 Tex. 62,

58 Am. Dec. 100; *Davies v. Fairbairn*, 3 How. 636. 11 L. Ed. 760; *Sullivan v. People*, 15 Ill. 233; *Leighton v. Walker*. 9 H. H. 59; *Dexter & Limerick Plank Road v. Allen*, 16 Barb. (N. Y.) 18; *Com. v. Kimball*, 21 Pick. (Mass.) 376; *Harrison v. Walker*, 1 Kelly (Ga.) 32; Sedg. on Stat. & Const. Law, 124."

See, also, *Moore v. Mausert et al.*, 49 N. Y. 332; *Perry et al. v. City of Denver et al.*, 27 Colo. 93, 59 Pac. 747; *Nations v. Lovejoy*, 80 Miss. 401, 31 South. 811; *Denver, etc., Ry. Co. v. Crawford*, 11 Colo. 598, 19 Pac. 673; *Schneider v. Staples*, 66 Wis. 167, 28 N. W. 145.

Guided by the rules thus announced, we are of the opinion that the latter act operated as a repeal of the former to the extent of revoking the authority granted to the board of county commissioners to employ the relator Pittman to assist the proper officers of that county in the discovery of property not listed and assessed for taxation prior to November 16, 1907, and also revoked his contract of agency.

That such is the effect of the repealing statute, if valid, is not seriously controverted, but it is, in effect, contended that the same is void and in conflict (1) with section 7, art. 2, of the Constitution of the state, which provides that "No person shall be deprived of life, liberty or property without due process of law," and (2) with section 15, art. 2, which provides that "no law impairing the obligations of contracts shall ever be passed"; and (3) with section 53, art. 5, which provides:

"The Legislature shall have no power to release or extinguish or authorize the releasing or extinguishing in whole or in part the indebtedness, liabilities or obligations of any corporation or individual of this state or any county or other municipal corporation thereof"—

and (4) with section 54, art. 5, which provides:

"The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued rights or penalties or proceeding begun by virtue of such repealed statute."

Numerous authorities are cited in support of these several contentions, but with none of them do we agree. We think it sufficient to say that the former act authorized the board of

county commissioners to employ an agent for the state, and to agree with him as to what compensation he should receive on the amount recovered. This it did, and there can be no doubt that the agency thus created was withdrawn by the repealing act; that is, unless there was a consideration given for the contract, or unless it was so coupled with an interest in the subject-matter of the agency—that is, the property to be discovered—as to make the agency irrevocable. As there is no contention that consideration passed, the repealing act revoked the agency, unless the same was coupled with an interest. That it was not is clear.

Speaking of this interest, the Supreme Court of Missouri, in *State ex rel. Walker v. Walker,* 88 Mo. 279, said:

"But the interest in such cases is an interest in the subject on which the power is to be exercised. An interest in that which is produced by the exercise of the power is not sufficient. The power must be engrafted on an interest in the property on which the power is to be exercised, and not an interest in the money derived from the exercise of the power. *Hunt v. Rousmanier's Adm'r,* 8 Wheat. 174, 5 L. Ed. 589; *Barr v. Schroeder,* 32 Cal. 609; *Coffin v. Landis,* 46 Pa. 431; *Blackstone v. Buttermore,* 53 Pa. 266."

*Missouri ex rel. Walker v. Walker,* 125 U. S. 339, 8 Sup. Ct. 929, 31 L. Ed. 769, was an application to the state court of Missouri for a mandamus, which was refused. The relator sued out a writ of error. The facts were that on March 19, 1881, the General Assembly of the state passed an act authorizing the fund commissioners of the state to employ an agent to prosecute, to final settlement before Congress and the Department at Washington, certain specified claims against the United States at his own expense, and receive as compensation therefor such commission on the amount collected by him as might be agreed upon between him and said commissioners, not exceeding a certain per cent. Section 3 of the act, in substance, provided that to facilitate his work certain officers of the state, having in their possession certain papers necessary to the establishment of said claims, were directed to turn them over to said agent upon written order of the Governor. On November 24, 1884, said commissioners, pur-

suant to said act, employed John R. Walker as said agent, and agreed to pay him for his services and expenses the maximum of compensation provided for in the act. Walker accepted the employment, and made a large expenditure of time and money in discharge of his duties thereunder. On March 28, 1885, the act of March 19, 1881, was repealed without a saving clause, and on the same day another act was passed, providing for authentication and payment of certain claims against the state for military services of a class in respect of which Walker had been employed as agent. It also provided for the delivery of these claims "to the agent for collection of the claims of the state against the government of the United States," and, in effect, that he should prosecute them to settlement and to reimbursement of the state by the government of the United States, and as compensation for such services receive his actual expenses incurred in the prosecution of the work, and make report of his work to the Auditor, who should draw his warrant therefor, provided the amount paid on said bill of expense should not exceed 5 per cent. of the amount of the collection so made for the state. Under this act a certain claim was presented and allowed, and Walker demanded it from the Auditor for collection from the United States, under his employment as agent pursuant to said act of 1881, but was refused on the ground that said act had been repealed. He thereupon applied to the Supreme Court of the state for a mandamus to compel the Auditor to make the delivery; his contention being that said repealing act impaired the obligation of his contract with the state under said act of 1881, and to that extent was void. The court denied the writ on the ground that Walker's employment was one of agency which the state could revoke at will, as it did by the repealing act. The Supreme Court of the United States, in effect, held that the fund commissioners were duly authorized to employ an agent for the state, and agree with him on the commission he was to receive on the amount collected, as compensation for his services and all expenses by him incurred in that behalf; that the agency thus created was withdrawn by the repealing act of 1885, and, the

same not being coupled with an interest, there was nothing in the employment to prevent the agency from being revoked, like any other, and in passing said:

"There is nothing whatever in the transaction, from the beginning to the end, which shows an intention on the part of the Legislature to part with any interest in or control over the claims except to the extent of the commissions of the agent after they had been earned. Walker was given no power to compromise any claim. All he could do was to establish the claim, and, when the state was ready to pay it, take his commissions. Clearly such an agency is not irrevocable in law because of its being coupled with an interest in the thing to be collected"—

and affirmed the judgment of the lower court denying the writ.

But it is contended that, as the repealing act was passed March 8, 1909, without the emergency clause, and this suit brought May 6, 1909, before said act took effect, such repeal cannot affect this suit, the same being a "proceeding began by virtue of" the repealed act, and within the contemplation of the general saving clause in the Constitution (article 5, § 54, Snyder's Ed. p. 171), which reads:

"The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued rights or penalties incurred or proceedings begun by virtue of such repealed statute."

But is this suit in mandamus a proceeding begun by virtue of the repealed act? It would seem not. We have just held that Act May 29, 1908, was only repealed by Act March 8, 1909, *pro tanto,* that is to the extent of revoking the authority of the board of county commissioners to employ the relator Pittman to assist the proper officers of the county in the discovery of property not listed or assessed for taxation prior to November 16, 1907, and also revoked his contract of agency. No other part of said act was affected, but remained in force. How, then, can it be properly said that this proceeding in mandamus was begun by virtue of that part of said act repealed? We can understand how a suit for a penalty incurred, instituted pursuant to the provisions of an act before its repeal, or how a suit for divorce, instituted pursuant to the provisions of an act authorizing it on cer-

tain grounds, and before its repeal, might be properly denomin-ated "proceedings begun by virtue of" the act repealed, and re-main by the repealing act unaffected (*Inskeep v. Inskeep*, 5 Iowa, 204); but neither did that part of the act of May 29, 1908, repealed, as stated, nor indeed the whole act, undertake to give a right of action to any one, but simply authorized the board of county commissioners to make a contract with a tax ferret and prescribe the procedure incident to bringing the property dis-covered by him within the taxing power.

The phrase "by virtue of" is defined by the Century Diction-ary to mean "by or through the authority of." The court, in *Bassett v. Mills,* 89 Tex. 162, 34 S. W. 93, so held in construing Act April 5, 1889, § 1, giving a lien for work done or material furnished for any building or improvement under or "by virtue of" a contract with the owner or his agent, trustees, contractor, or contractors. "By virtue of," as used in an issue of certain bonds of a municipal corporation, which recited that they were issued "by virtue of" a certain statute, was so held by the Su-preme Court of the United States in *Independent School Dis-trict v. Stone,* 106 U. S. 183, 1 Sup. Ct. 84, 27 L. Ed. 90, to import to a *bona fide* purchaser for value full compliance with the statute. And so we say that the phrase "proceedings begun by virtue of such repealed statute" means by or through the authority of, and in full compliance with, that statute. How can such be said with reference to the proceedings at bar, when the repealed statute did not undertake to give a right of action to anybody? But let that be as it may, what was the object of that part of the general saving clause under discussion which is preserved in the Constitution? At common law, where an action was brought under a statute which was afterwards repealed, the court lost jurisdiction of the suit pending under the repealed act, and could render no judgment therein, on the theory that all suits abated by the death of the King, and that the law does not survive the chief officer, the King.

This rule of common law is well illustrated in *French v. State,* 53 Miss. 651. That was a suit brought upon the bond of a

defaulting tax collector. It was instituted in the name of the state of Mississippi, "upon the relation of Alexander Fielding, agent, etc., employed by the Governor of said state, under and by virtue of an act to provide for the collection of revenue improperly withheld from said state and county treasury, approved March 4, 1875" (Laws 1875, p. 30, c. 9). Under the provisions of said act the Governor was authorized to appoint a special revenue agent to bring suit against delinquent officers, one-half of the recovery to go to said special agent. The statute was repealed by Act Jan. 28, 1876 (Laws 1876, p. 36, c. 35), several months before the rendering of the judgment appealed from. There was no saving clause in the repealing act of any suit pending under the act repealed. The court, in passing, said:

"Nothing is better settled than that, under such circumstances, the court is left without jurisdiction to proceed with the suit. *Musgrove v. Vicksburg & Nashville Railroad,* 50 Miss. 677. * * * The action was brought solely by virtue of the repealed statute, and with an eye single to its provisions. Under these circumstances it must be dismissed."

To mitigate this harsh rule of the common law this general saving clause was preserved in our Constitution, and is a part of every act passed by our Legislature, as much so as if expressly written in the act. The part of it under discussion simply means that "proceedings begun by virtue of such repealed statute," instead of being dismissed by the court for want of jurisdiction after the repeal of that law, as under the common law, shall be by the court retained, and pass to judgment unaffected by the repealing act so far as the "proceedings" are concerned; that is, the "proceedings," which are defined to mean "all the steps or measures adopted in the prosecution or defense of an action," shall not be affected, but, as stated, the court shall continue to entertain jurisdiction and proceed to judgment in the cause. *John C. Gordon, Probate Judge, v. State of Kan. ex rel. Henry Boder,* 4 Kan. 421; *Main Street, etc., Co. of Horton v. Horton Hardware Co. et al.,* 56 Kan. 448, 43 Pac. 769; *Joseph L. Crawford v. David P. Shaft,* 35 Kan. 478, 11 Pac. 334; *Charles Jockers v. Mary Borgman,* 29 Kan. 78, 44 Am. Rep. 625.

That such was all that was meant by a "proceeding begun by virtue of such repealing statute" within the contemplation of the general saving clause under consideration is squarely passed upon in *Peoria, etc., Insurance Co. v. Dickerson et al.,* 28 Iowa, 274. In that case the facts were that process was served on defendants to appear and answer plaintiff's suit on the second Monday of July, 1868, pursuant to chapter 9, p. 7, Acts 11th Gen. Assem. fixing the terms of court of Polk county for the first Monday of February and the second Monday of July of each year. A short time prior to the appearance day the Legislature passed another act (Acts 12th Gen. Assem. p. 169, c. 127), providing that the time for holding said court thereafter should be on the fourth Monday of February and the fourth Monday of October of each year. Said act contained no saving clause with reference to suits or proceedings pending, but Revision 1860, § 29, provided, in effect, "that the repeal of a statute does not affect any proceeding commenced under it." The defendants failed to appear at the October term, whereupon default was entered, and judgment rendered thereon against them. A motion to set aside the default was overruled by the trial court, and the question before the Supreme Court was whether the default was rightfully entered. The court, in construing the section of the statute, *supra,* in effect, held that the trial court had jurisdiction of the persons of defendants; that the suit was a proceeding commenced; that said proceedings were in no way affected by the repeal of the statute changing the terms of court; that every one was bound to take notice of a public statute; that the default was rightfully entered—and affirmed the judgment of the lower court.

*Bookwalter v. Conrad et al.,* 15 Mont. 464, 39 Pac. 573, 851, was a suit in ejectment commenced in M. county, where the land was situate, pursuant to section 11, art. 8, of the Constitution. Section 56 of the Code of Civil Procedure of 1887 provided that such action should be tried there. Prior to the appearance of defendant the land was cut into F. county by a subsequent act of the Legislature creating a new county. At that

time section 209, div. 5, Gen. Laws, Comp. St. 1887, was in part as follows:

"No action, * * * pending at the time any statutory provision shall be repealed, shall be affected by such repeal but the same shall proceed in all respects as if such statutory provisions had not been repealed."

Counsel contended that under said section of the statute the action should proceed in M. county, because it was pending there when F. county was created, and that the act creating the latter county could not affect the action then pending in M. county. The court held a "suit" to be "any proceeding for the purpose of obtaining such remedy as the law allows," and in effect that "suit, action, and judicial proceeding" were synonymous terms; that the act creating F. county did not, in the language of said section, affect the action pending in M. county, or have to do with it at all, and that no rights, pleas, or defenses therein were affected thereby, and that said section referred to the proceeding and its preservation, and not the place of trial.

We are therefore of opinion that, inasmuch as we have not dismissed this cause, but have proceeded to judgment herein, the repealing statute did not, and has not, affected this proceeding, if indeed this is a "proceeding begun by virtue of such repealed statute," upon which we express no opinion.

Said general saving clause we believe to be a rule of construction for determining the intent of the Legislature. It has been declared so to be wherever we have met it in the books, except in our own Constitution. Determining that intent in the passage of the acts under consideration, we believe that of the first to have been to reach back for a series of years and discover all property which had escaped taxation during that time and bring it under the taxing power. To that end said act, in effect, provided that the board of county commissioners might employ a ferret, and further provided the procedure to accomplish the ultimate purpose of the act. The relator Pittman was employed pursuant to the provision of that act, and entered upon the discharge of his duties. Subsequently the legislative intent changed,

·and in part repealed that act, thereby, in effect, declaring that it was no longer the intent of the Legislature to discover any prop-·erty which had escaped taxation prior to the admission of the state into the Union, and by said repealing act, in effect, revoked the agency of the ferret, and deprived him of the power to proceed further in the premises. Under the circumstances, as mandamus is not a writ of right, but one resting largely within the sound legal discretion of this court, this ferret does not appeal very strongly to that discretion when, by this proceeding, he asks us to compel by means of this writ the respondent, McCafferty, as treasurer, to do a useless act; that is, among other things, in effect, to cite some several hundred citizens of Oklahoma county to show cause why certain property alleged to belong to them, and to have escaped taxation through a series of years, should not be assessed for taxation for those years, when no law exists to subject it to taxation for those years when discovered.

*Commonwealth ex rel. Inhabitants of Springfield v. Commissioners of Highways*, 6 Pick. (Mass.) 501, was mandamus to require said commissioners to cause a certain road to be constructed, and certify the expenses of so doing to the court of sessions, or show cause to the Supreme Court at the next May sessions in Hampden. At that time the commissioners appeared, and· did so. Later petitioners moved to quash the return, and moved that the peremptory writ issue, which motion was met by a motion of respondents to quash the writ. Pending argument on said motions, an act was passed repealing the act providing for the creation of "commissioners of highways" and provided for the appointment of "county commissioners," who were vested with all the powers of commissioners of highways. The question before the Supreme Court was "whether the commissioners of highways can now lawfully be compelled by mandamus to execute the duty assigned them in the repealed statute; or, in other words, whether any power or authority remains with that body in relation to the subject-matter of these proceedings, which power and authority they may be compelled to exercise." In

passing, the court, in effect, held that, as all the power of the commissioners of highways to act in the premises was destroyed by the repealing statute, they could not be so held, and it was accordingly denied.

The writ is denied.

All the Justices concur.