## In re HARRISON.

S. C. B. D. No. 376. May 19, 1942.

*126 P. 2d 80.*

Harold Sullivan, of Oklahoma City, for Oklahoma Bar Association.

Truman Harrison, of Ada, pro se.

RILEY, J. These proceedings present for review a recommendation of the Board of Governors of the State Bar that the respondent, Truman Harrison, be suspended from the practice of law for one year.

The secretary of the State Bar filed in November, 1937, an accusation against respondent, a member of the State Bar. Respondent answered on December 6, 1937. A hearing was had at Ada, Okla.. on March 9, 1938, before A. N. Boatman, a member of the Board of Governors. The Board of Governors on August 26,

1938, entered its recommendation and respondent petitioned for review January 3, 1939. On July 28, 1939, the act of the Legislature repealing article 2, ch. 22, O. S. 1931, known as "The State Bar Act," became effective. Thereafter, March 5, 1940, respondent filed herein his plea in abatement based on the repeal of the "State Bar Act," and the adoption of section 2, art. 1, ch. 22, S. L. 1939, providing that the Supreme Court shall have the exclusive authority to discipline attorneys at law.

The statute and rules promulgated thereunder authorizing these proceedings were in full force and effect until after the time when the proceedings were certified to this court.

Section 54, art. 5, Constitution of Oklahoma, clearly preserves these proceedings. It provides:

"The repeal of a statute shall not revive a statute previously repealed by such a statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute."

"Accrued right," as used therein, is defined in Morley v. Hurst, 174 Okla. 2, 49 P. 2d 546, as follows:

" 'Accrued right,' as used in section 54, art. 5, of the State Constitution, may be defined as a matured cause of action, or legal authority to demand redress."

The plea in abatement is denied. State ex rel. West v. McCafferty, 25 Okla. 2, 105 P. 992, L.R.A. 1914A, 639; Barry v. Board of Com'rs of Tulsa County, 173 Okla. 645, 49 P. 2d 548; Green et al. v. Board of Com'rs of Lincoln County et al., 126 Okla. 300, 259 P. 635.

The accusation presented against respondent is, with one possible exception, vague, indefinite, and uncertain. It was verified on information and belief.

Paragraphs 3 and 4 accused respondent as follows:

"That he, the said Truman Harrison, has represented to various and sundry persons, both by word of mouth, by deed and by inference, that he has or did have political influence with the judge of the county court of Pontotoc county, Oklahoma, and the county attorney of Pontotoc county, Oklahoma, and the sheriff and other public officials of Pontotoc county, Oklahoma."

And:

"That the course of conduct of said accused, Truman Harrison, as aforesaid, dispossesses and disqualifies him of the good moral character prerequisite to the practice of law."

There is no sufficient evidence to substantiate this part of the accusation.

Paragraphs 5 and 6 of the accusation charge:

"That the said accused, Truman Harrison, has represented to various and sundry clients that he had the judge of the county court of Pontotoc county, Oklahoma, and other public officials, whose duty it is to enforce the laws of the State of Oklahoma, fixed, and that by word of mouth he further represented to the said clients that he did, could and would fix the said aforementioned public officials by then and there paying to them bribery money and in that manner influence and effect their decisions and conduct in the enforcement of the law and in the judicial determination and judgment of the law."

And:

"That the accused has been guilty of violation of the duties of an attorney and counselor at law in the manner and character hereinbefore set out."

The evidence against respondent as to this charge is of an unsatisfactory character. It comes from self-confessed criminals who were dissatisfied because their hopes with reference to their cases were not realized. The only witnesses against respondent on this charge were Silas Herion, Berdie Gray, and R. E. Golightly. All were self-confessed criminals whom respondent had represented in cases wherein they were charged with violation of the law against selling intoxicating liquor.

The substance of their testimony was that on several occasions respondent came to them and told them that he needed some money in connection with

their cases. But in almost every instance these witnesses concluded that they were making payments on their attorney's fee and that respondent never did tell them that he intended the money for the county judge or county attorney.

Golightly did testify that on one occasion he had made an affidavit to the effect that respondent had asked him for $15, and said that he needed the money to satisfy the county judge. He admitted, however, that at the time he was "mad" at respondent; that this was because the county judge had stated to the witness at the time he assessed a fine against the witness that it had cost him $50 more because respondent represented him.

The witness Herion testified that respondent failed to appear when his cases came on for trial and that he pleaded guilty.

Apparently the witnesses were dissatisfied with respondent because he had failed to advise that he had no influence with the county judge. These witnesses discredited themselves by admissions of prejudice and by qualifying their statements.

Berdie Gray testified that respondent represented her in one case in the county court and another in the federal court; that he had told her that his fee would be $50, but that he asked her for $15 more to get the case "fixed up."

Respondent testified that he was employed to represent Berdie Gray in two cases, one a liquor case in the county court and one in the federal court; that he charged her a fee of $100 for the case in the county court and $125 or $150 for the case in the federal court; that she had paid him altogether about $65. In the federal court he was successful, but in the county court the case had never been called for trial. He denied that he had told Berdie Gray that $15 was to go to the county judge or county attorney. He did talk to the county attorney about the case, and the county attorney admitted that he had no case against her codefendant, Sam

Piles, and that the case was dismissed as to him and that he, Sam Piles, had paid $75 on his fee in that case, and that the case as to Berdie Gray was postponed and had never been tried.

The evidence was insufficient to sustain the accusation as to count 5, except for the admissions of respondent himself.

The witness Herion testified that on one occasion respondent had come to him and asked for money to help defray the expenses of "the boys" to Dallas for the football game; that the witness gave respondent "forty or fifty or seventy-five dollars"; that respondent did not state whom he meant by "the boys," but that respondent mentioned "Virgil," and that the witness "imagined" that respondent meant Virgil Stanfield, the county attorney.

Respondent admitted soliciting the money and admitted that he got $25 which he gave to the county attorney. He explained:

"The county attorney was going down and he had accommodated me on several occasions and in regard for his consideration toward me, I got some money from Mr. Herion, the amount this respondent remembers was $25, which I let the county attorney have, not through any attempted bribery or anything ill or wrong intentions, in order for him to go to the game."

Respondent's conduct was improper and his testimony tends to substantiate the fact that he sought favors from the county attorney's office.

Finally, the accusation charged:

"That the accused, Truman Harrison, has on various occasions, more particularly in Case No. 2949 in the county court, by trickery and chicanery and by false representations, caused the county court clerk of Pontotoc county, Oklahoma, to accept and approve a worthless bond presented in said Cause No. 2949, being styled State of Oklahoma v. J. J. Rushing, which bond was for the appearance of the defendant in court on a date certain thereafter."

The charge is only partially supported by the evidence. The evidence does not

show that the bond was worthless. There is evidence to the effect that respondent stated to the surety who signed the bond that it was for only $3,500, whereas in truth the bond was for the sum of $15,000. The surety testified that when he signed the bond it was in blank and respondent represented that it was for only $3,500. The surety testified that he would not have signed the bond had he known it was for $15,000 because he, the surety, was not worth that sum.

The principal defaulted and the bond was forfeited. But the surety at his own expense had the accused returned from California. It is, therefore, apparent that the bond was not entirely worthless. The charge was, however, that respondent by trickery, chicanery, and by false representations caused the county court clerk to accept and approve the bond. The evidence against respondent as to that part of the charge is that respondent, after having the bond executed, took it to the courthouse and on the way met the court clerk; that she had a conversation with respondent about the bond but she did not approve it but told respondent that she would have to check the surety. The respondent then presented the bond to Fred C. Reynolds, the deputy court clerk, under representation of the court clerk's oral approval, and it was then accepted. But the testimony of this witness was weakened by cross-examination. He finally stated that he did not remember what respondent did say when he presented the bond to him. The real misconduct of respondent in connection with this transaction is the fact, which he admitted, that he caused it to appear that the surety on the bond had appeared before a notary public and verified under oath the value of the property scheduled at $15,000, when in truth and in fact the surety never did so appear or verify the statement. However, the misconduct, in this regard, is not charged by the accusation.

Eleven of the 13 members of the board present and participating concurred in the findings as to guilty, but four of the members dissented as to punishment.

The board recommended that respondent be suspended from the practice of law in this state for a period of one year. There can be no doubt that respondent has been guilty of conduct which cannot be excused, but from the record as a whole, considering the weakness of the evidence in general, we are unwilling to approve in whole the recommendation of the board as to punishment.

Judgment of this court is that respondent be suspended from practice of law in this state for a period of 60 days subsequent to finality of this opinion.

CORN, V. C. J., and BAYLESS, GIBSON, and HURST, JJ., concur. DAVISON, J., concurs in conclusion. WELCH, C. J., and OSBORN and ARNOLD, JJ., absent.