Dear Representatives Mantzer
¶ 0 The Attorney General has received your letter asking for an official opinion addressing the following questions:
1. Under the terms of Chapter 176, 1 of the 1985 OklahomaSession Laws (Senate Bill No. 284), and the terms of Chapter 178,29 of the same 1985 Oklahoma Session Laws (House Bill No. 1164),both of which purported to amend 59 O.S. 164 (1981), and bothof which appear in the published supplements to the Oklahomastatutes, is the Board of Chiropractic Examiners required toexamine prospective practitioners in the specified areas setforth in Senate Bill No. 284 or only under the more generalprovisions of House Bill No. 1164?
 2. Under the same statutory amendments, are the members of theBoard of Chiropractic Examiners entitled to receive expensereimbursements above the amounts set forth in the Oklahoma TravelReimbursement Act?
¶ 1 In 1985, two separate Bills were enacted into law addressing the terms of 59 O.S. 164 (1981), as amended. 59O.S. 164 sets forth several directions aimed at the Oklahoma Board of Chiropractic Examiners. Three aspects of this section are pertinent to the questions posed. First, the initial paragraph of 59 O.S. 164 outlines in broad terms the basic examination requirements that must be included in tests given to persons desiring to practice chiropractic in this State. Second, two positions of the Board are referenced in a certain manner. Third, the section outlines the ability of members of the Board to seek reimbursement from the State for expenses incurred while engaged in official functions.
¶ 2 59 O.S. 164, as it appeared prior to 1985, and as it had been last amended in 1982, stated, in pertinent part:
 The examination shall cover such technical, professional and practical subjects as relate to the practice of the profession of chiropractic. The examination shall also cover the following subjects: chiropractic principles, anatomy, histology, physiology, symptomatology, orthopedic, chemistry, spinography, diagnosis, sanitation and hygiene, pathology, public health service and adjustology. The Board shall examine each applicant in the art of chiropractic adjusting in such manner and by such methods as shall reveal the applicant's qualifications.
* * * * *
 The treasurer shall submit, at the July meeting of the Board, a full itemized report of the receipts and disbursements for the year, showing the amount on hand. The fees retained by the Board shall be kept in a separate fund to be paid out only for the actual expense of the Board and the general work incident to its usual activities. Each member of said Board of Chiropractic Examiners shall receive Thirty-five Dollars ($35.00) per diem for each day engaged in the discharge of official duties pursuant to 59 O.S. 161 through 59 O.S. 170 of this title, and other expenses as provided in the State Travel Reimbursement Act. Salaries and expenses and all other expenses incident to the conduct of the affairs of the Board shall be paid out of the funds of the Board, on the order of the Board, and signed by the president and the secretary of the Board.
¶ 3 The two 1985 Bills amending these provisions altered their content significantly, each in its own way. Senate Bill No. 284 was finally passed by both houses as of June 11, 1985, and was signed by the Governor on June 18, 1985. This Bill had no emergency clause attached to its terms, and therefore, was not scheduled to come into effect until October 19, 1985, ninety days after sine die adjournment of the Legislature. House Bill No. 1164 was finally passed by both houses as of June 13, 1985, two days after Senate Bill No. 284, and was similarly signed by the Governor two days after his signature of Senate Bill No. 284, on June 20, 1985. However, House Bill No. 1164 contained an emergency clause dictating that its terms were to become operative on July 1, 1985. With reference to the two areas of 59O.S. 164 that were purported to be amended, Senate Bill No. 284 indicated that 59 O.S. 164 should read, in pertinent part:
 The examination shall cover such technical, professional and practical subjects as relate to the practice of the profession of chiropractic. The examination shall also cover the following subjects: chiropractic principles, anatomy, histology, physiology, symptomatology, orthopedic, chemistry, spinography, diagnosis, sanitation and hygiene, pathology, public health service and adjustology. The Board of Chiropractic Examiners shall examine each applicant in the art of chiropractic adjusting in such manner and by such methods as shall reveal the applicant's qualification, x-ray, diagnostic laboratory procedures physiological therapeutics and subjects taught by chiropractic colleges approved by the Council on Chiropractic Education.
* * * * *
 The treasurer secretary-treasurer shall submit, at the July meeting of the Board, a full itemized report of the receipts and disbursements for the year, showing the amount on hand. The fees retained by the Board shall be kept in a separate fund to be paid out only for the actual expenses of the Board and the general work incident to its usual activities. Each member of said Board of Chiropractic Examiners shall receive Thirty-five Dollars ($35.00) per diem for each day engaged in the discharge of official duties pursuant to 59 O.S. 161 through 59 O.S. 170 of this title, and other expenses as provided in the State Travel Reimbursement Act, 74 O.S. 500.1 et seq. of the Oklahoma Statutes.
Salaries and expenses and all other expenses incident to the conduct of the affairs of the Board shall be paid out of the funds of the Board, on the order of the Board, and signed by the president and the secretary secretary-treasurer of the Board.
(Underlined portions were intended to be new language, and portions stricken out indicated intended deletions.)
¶ 4 These amendments, if standing alone, would indicate that two alterations were mandated by the Legislature. First, that the examination requirements for persons desiring to practice chiropractic medicine in this State, in addition to previously existing requirements, were now also to include examinations in x-ray, diagnostic laboratory procedures, physiological therapeutics and subjects taught by certain chiropractic colleges. Second, that the former positions of treasurer and secretary to the Board were to be changed into the single position of secretary-treasurer. The only remaining change, that in the final paragraph of 59 O.S. 164, merely identified the location where the State Travel Reimbursement Act may be found in the Oklahoma statutes.
¶ 5 As noted above, however, only two days after Senate Bill No. 284 was signed by the Governor, House Bill No. 1164 was also approved by the Governor, and the terms of section 29 of that Bill addressed the same statutory provisions as Senate Bill No. 284. Title 59 O.S. 164, as amended by the terms of House Bill No. 1164, if standing alone, would amend the final paragraph of59 O.S. 164 as follows:
 The treasurer shall submit, at the July meeting of the Board, a full itemized report of the receipts and disbursements for the year, showing the amount on hand. The fees retained by the Board shall be kept in a separate fund to be paid out only for the actual expenses of the Board and the general work incident to its usual activities, on the order of the Board, and signed by the president and secretary of the board. Each member of said Board of Chiropractic Examiners shall receive Thirty-five Dollars ($35.00) per diem for each day engaged in the discharge of official duties pursuant to Sections 161 through 170 of this title, and other travel expenses as provided in the State Travel Reimbursement Act. Salaries and expenses and all other expenses incident to the conduct of the affairs of the Board shall be paid out of the funds of the Board, and on the order of the Board, and signed by the president and the secretary of the board.
¶ 6 As is readily seen, the changes called for in this Bill are rather different from those outlined in Senate Bill No. 284. The initial language of the statute, relating to licensee examination requirements, was not altered at all by House Bill No. 1164. The positions of treasurer and secretary were left the same as in previous law. The most significant change, however, was the alteration in House Bill No. 1164 of both the basis and the amount of reimbursement that could be claimed from Board funds by Board members. All of the previous language providing for a special per diem entitlement of Thirty-five Dollars per day was ordered deleted by this Bill, language which was unaffected by the terms of Senate Bill No. 284.
¶ 7 The questions you pose ask for a construction of these seemingly contradictory Bills, both enacted into law and both affecting the same statute. Preparatory to a specific analysis of the issues at hand, it is important to note a number of rules of statutory construction that are applicable to this type of question.
¶ 8 The cardinal rule of statutory construction is to ascertain the intent of the Legislature, and, if possible, to give effect to that intent. Magnolia Pipe Line Co. v. Oklahoma TaxCommission, 167 P.2d 884 (Okla. 1946). The repeal of a statute by implication is not to be favored. City of Tulsa v. Smittle,702 P.2d 367 (Okla. 1985); Ritchie v. Raines, 374 P.2d 772
(Okla. 1962). There must be an "irreconcilable conflict" for an earlier statute to be deemed repealed by implication due to the passage of a latter statute, Gulf Oil Co. v. Woodson,505 P.2d 484 (Okla. 1972), and the conflict must be "clear and manifest."Yellowfish v. City of Stillwater, 691 F.2d 926 (10th Cir. 1982). This presumption is especially strong against an implied repeal of an act by another of a later date at the same session of theLegislature. Okla. Assoc. of Municipal Attorneys v. State,577 P.2d 1310 (Okla. 1978); In Re Adoption of Lewis, 380 P.2d 697
(Okla. 1963).
¶ 9 When two acts are seemingly repugnant, they should be construed, if possible, so that the latter will not operate as a repeal or modification of the former. Shriver v. Graham,366 P.2d 774 (Okla. 1961). If by the application of every reasonable rule of construction substantial harmony is found possible, then there is no irreconcilable conflict. Homestake Production Co. v.Bd. of Equalization of Seminole County, 416 P.2d 917 (Okla. 1966). There is no inference that should be raised that one act was intended to destroy another if they are on the same subject matter and enacted at the same meeting of the Legislature. On the contrary, they should be construed, if possible, to give full effect to each. Garton v. Hudson-Kimberly Pub. Co., 58 P. 946
(Okla. 1899).
¶ 10 It should be noted that for many years Oklahoma unqualifiedly recognized the existence of a rule of statutory construction which stated that where a section expressly amendatory of another section of a statute purports to set out in full all that it is intended to contain, any matter which was in the original section, but is not in the amendatory section, is repealed by the omission. Parker v. Blackwell Zinc Company,325 P.2d 958 (Okla. 1958); Ratliffe v. Cornelius, County Clerk,151 P. 675 (Okla. 1915); State ex rel. West v. McCafferty,105 P. 992 (Okla. 1909). Even this rule has been seriously limited in scope, however, and the Oklahoma Supreme Court has embraced a general philosophical viewpoint that even the Parker rationale has a very limited context. AMF Tubescope Co. v. Hatchel,547 P.2d 374, 379 (Okla. 1976) (expressly overruling Parker). The Court, in AMF Tubescope, stated:
 We erred in Parker, supra, when we did not reconcile 24 with 43 and give effect, if possible, to both sections, as is required by recognized principles of statutory construction.
* * * * *
 When two acts, or parts of acts, are susceptible of construction which will give effect to both without doing violence to either, this construction should be adopted in preference to one which leads to a conclusion that there is a conflict.
¶ 11 What is somewhat confusing at first blush is that just seven years after expressly overruling Parker in AMFTubescope, the Oklahoma Supreme Court pointed to the decision with approval as still standing for the general proposition that the state recognizes a doctrine of amendment or repeal by implication. Mistletoe Express Service v. United ParcelService, 674 P.2d 1, 6 (Okla. 1983). How then should the statutory provisions under examination here be construed?
¶ 12 While it is possible for two statutory amendments passed during the same session of the Legislature to be so repugnant to one another as to compel a finding that the latter in time negates the vitality of the former in time, such a determination, under AMF Tubescope, will only be reluctantly reached where there is no other avenue available for recourse. There is no automatic rule of thumb that can be resorted to in such instances. If there is any way to construe the two provisions together, such a construction must be reached.
¶ 13 In this instance, a review of the full set of terms of the two Bills indicates that they had very different goals and purposes underlying their adoption into law. Senate Bill No. 284 was intended to address the issue of the type of requirements that must be included in the examinations that chiropractic practitioners must pass in order to practice in this State. As an ancillary matter, the positions of treasurer and secretary to the Board were altered to become the single position of secretary-treasurer. House Bill No. 1164, on the other hand, was designed to generally address the issue of standardizing reimbursement allowances that a host of state officers from a variety of state agencies, boards and commissions were then entitled to receive under state law. The removal of the Thirty-five Dollars special per diem allowance previously granted to Board members was effected along with similar removals of special privileges for other officers, as well.
¶ 14 There being no manifest repugnance between the terms of the two Bills, under AMF Tubescope, they should be harmonized if at all possible. Such a result is possible by giving effect to the changes made in both Bills, none of which really do violence to the intended changes of the other.
¶ 15 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. Title 59 O.S. 164 (1988), as last amended byChapter 176, 1 and Chapter 178, 29 of the 1985 Oklahoma Session laws(Senate Bill No. 284 and House Bill No. 1164 of the 1985Legislature, respectively) should be read as encompassing the newprovisions of both enactments, and the terms of neither Billshould be read to the exclusion of the other. Applicants forlicenses to practice the chiropractic arts in this State must beexamined in the specific areas set forth in the terms of SenateBill No. 284. The positions of treasurer and secretary to theBoard of Chiropractic Examiners are combined into the singleposition of secretary-treasurer.
 2. Members of the Board of Chiropractic Examiners are notentitled to receive special per diem reimbursements in the amountof Thirty-five Dollars per day, as had been authorized by 59 O.S.164 prior to the 1985 amendments, and are only entitled toreceive travel reimbursement payments as set forth in House BillNo. 1164.
 3. Where two Bills arising from the same Legislative sessionare approved into law and address the same statute withoutreference to one another, effect, if possible, should be given toboth Bills, in preference to a conclusion that one Bill is inconflict with the other. The adoption of the latter statute intime does not automatically negate and repeal by implication theterms of the statute adopted first in time. Each instance must bereviewed on a case-by-case basis.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
MICHAEL SCOTT FERN ASSISTANT ATTORNEY GENERAL