# CHARLESTON.

P. M. Higgins *v.* Williams Pocahontas Coal Co. *a corpora-
tion, and* H. E. Ewing

(No. C. C. 397)

Submitted April 12, 1927.    Decided April 26, 1927.

1.  MASTER AND SERVANT—*Compensation Commissioner Acts in
    Quasi Judicial Capacity.*

    In investigating and determining claims for compensation
    out of the workman's compensation fund, the State Compen-
    sation Commissioner acts in a quasi judicial capacity.
    (p. 506).

    (Workmen's Compensation Acts, C. J. § 175 [Anno].)

2.   LIBEL AND SLANDER—*On Claim of Absolute Privilege For Defamatory Communication to Quasi Judicial Tribunal, Test is Whether it Was Relevant to Subject Under Inquiry.*

When, in libel, absolute privilege is claimed for a defamatory communication made to a quasi-judicial tribunal, the test of the claim is, was it relevant to the subject under inquiry.   (p. 507).

(Libel and Slander, 36 C. J. §§ 225, 237.)

3.   SAME—*When Circumstances of Communication Are Undisputed, Question of Privilege is One of Law for Court.*

When the circumstances under which a communication was made, are not in dispute, the question of privilege is entirely one of law for the court.   (p. 507).

(Libel and Slander, 36 C. J. §§ 225, 237.)

(NOTE: Parenthetical references by Editors C. J.—Cyc. Not part of syllabi.)

Case Certified from Circuit Court, McDowell County.

Action by P. M. Higgins against the Williams Pocahontas Coal Company and another for libel. The trial court sustained the named defendant's demurrer to the declaration and overruled the demurrer of defendant H. E. Ewing, and certified the case.

*Affirmed.*

*Russell S. Ritz,* for plaintiff.

*Strother, Sale, Curd & Tucker,* and *W. Goodridge,* for defendant.

HATCHER, PRESIDENT:

This is an action for libel. The lower court sustained the demurrer of the defendant Williams Pocahontas Coal Co. to the declaration, overruled that of the defendant H. E. Ewing, and certified the case here for guidance.

The material allegations of the declaration are that the plaintiff made claim to the Workman's Compensation Commissioner of West Virginia for compensation for injury to an eye, sustained while working in the mines of the defendant company in the year 1924; that after proof was submitted and a careful investigation made, an award of $16.00 a week for one hundred weeks was made to the plaintiff on May 23, 1925,

by the Commissioner, and shortly afterwards a voucher for $224.00 on the award was mailed to the plaintiff in care of the defendant company; that in June, 1925, the defendants, contriving to injure the good name of the plaintiff, wrote a letter to the Commissioner, which is in part as follows:

> "In regard to the P. M. Higgins case, No. 4071-70. He was injured some years ago in Virginia by chip striking him in the eye. Since that time he has been known as 'Pink Higgins', deriving above name from pink patch worn over eye, he has been practically blind in this eye for last five years and has been drawing sick benefits from his lodges and insurance companies. One company refused to carry him without a rider with policy, stating that they would pay no more sick benefits for this eye.
>
> Dr. Perry knows nothing about the case, but was possibly honest in his belief that loss of eye was caused by injury received in the mines. We want this case thoroughly investigated before anything is paid on this claim.
> * * * Wire or write us to hold up any checks that may have been written on this case."

that the statements in the letter are false; that because of the letter the award was set aside and not re-instated until April, 1926; and that the good name of plaintiff has been greatly injured, etc.

The defendant company takes the position that the letter complained of is the communication to a quasi-judicial tribunal of a party interested in the subject matter then under investigation, and is therefore absolutely privileged.

Counsel for plaintiff concedes that the Compensation Commissioner acts in a quasi-judicial capacity in determining claims such as that of plaintiff, and that a witness testifying in a "regular manner" before the Commissioner would be exempt from liability for any statement then made. Counsel advocates the theory that in order to warrant such exemption, it must appear that the communication is in response to a question asked in a case then pending. Counsel contends that in this case the letter was not in response to an inquiry

of the Commissioner, but that it was written at a time when no hearing was pending before the Commissioner, after all the evidence had been heard on plaintiff's claim and the award made, and is therefore not entitled to privilege. Counsel further contends that if privilege of any kind should be extended to the defendant company, it is only a qualified privilege, which should be submitted to the jury on the question of whether this privilege has been abused.

The fact that plaintiff's claim had been investigated and an award made, did not close the case. By statutory provision, there is no finality to such an award and the case may be re-opened from time to time. "The power and jurisdiction of the Commissioner over each case shall be continuing, and he may from time to time make such modification or change with respect to former findings or orders with respect thereto as, in his opinion, may be justified." Sec. 40, Ch. 15P, Code. The rate of premium payable by the defendant company to the Workman's Compensation fund is determined in part by its record of employees injured. Sec. 18, Ch. 15P, Code. As its record was affected by the award to the plaintiff, it was interested therein. Because of such interest, the letter cannot be considered a voluntary communication. Even so, the law extends its aegis to a voluntary statement if it is "pertinent to the issue being tried". 36 C. J. p. 1259, Sec. 237. The inquiry before the Commissioner embraced the time and place of the injury to plaintiff, as well as its severity. The statements in the letter were relevant to those subjects. Being relevant, the letter was absolutely privileged, and its status is not changed by falsity or maliciousness of its statements. It is settled law that the test of a privileged statement is not its truth or good faith, but its relevancy. A full discussion of this subject is given in 36 C. J. pp. 1250, 1251 and 1252, and the cases cited in the notes. See also the opinion of Judge GREEN *in Johnson* v. *Brown,* 13 W. Va. 71 (129-130). The same authorities show that such a privilege is absolute.

The circumstances under which the communication was made not being in dispute, the question of privilege is en-

tirely one of law for the court. "It is exclusively for the judge to determine whether the occasion on which the alleged defamatory statement was made was such as to render the communication a privileged one." Newell, Slander and Libel, 4th Ed., Sec. 345.

There is nothing in the declaration showing any connection between the company and Ewing (except as conspirators), or that he is entitled to claim the privilege extended to the company.

The ruling of the circuit court is therefore affirmed.

*Affirmed.*