## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

J. W. PENICK AND OTHERS v. JOHN L. RATCLIFFE.

December 22, 1927.

1. ELECTIONS—*Election Contest—Whether Primary Election Contest is an Action at Law or Suit in Equity—Technicalities.*—A proceeding to contest a primary election under Code of 1919, section 267, is neither an action at law nor a suit in equity, but is based upon the statute. In sections 247 and 267 of the Code of 1919 it is declared that the rules of law and equity govern proceedings to contest elections, and that the contest shall be heard upon its merits. It was the plain purpose of the legislature that such matters should be dealt with in no technical way.

2. LIBEL AND SLANDER—*Privilege—Judicial Proceedings—Election Contest—Relevancy and Pertinency—Questions for Court—Case at Bar.*— The instant case was an action for libel. The alleged libelous publication was a petition in an election contest. If the petition and the proceedings had thereunder were court proceedings, and if the allegations charged to be libelous were relevant or pertinent, then the occasion was one of absolute privilege, and there could be no recovery.

   *Held:* That since there was no dispute as to the circumstances under which the offending publication was made, the questions of whether the proceedings were court proceedings and whether the objectionable charges were relevant or pertinent, were for the court.

3. LIBEL AND SLANDER—*Privilege—What Constitutes a Judicial Proceeding.*—A "judicial proceeding" within the rule of absolute privilege is not restricted to trials of civil actions or indictments, but it includes every proceeding before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action of such court or officer. The rule is broad and comprehensive, including within its scope all proceedings of a judicial nature whether pending in some court of justice, or before a tribunal or officer clothed with judicial or quasi judicial powers.

4. LIBEL AND SLANDER—*Privilege—What Constitutes a Judicial Proceeding—Contest of Primary Election under Section 247—Continuance.*— Proceedings to contest a primary election under section 247 of the

Code of 1919, are judicial proceedings and absolutely privileged. The nature of the proceeding is fixed by statute, and is not changed by the failure of the court to act at its next term or by any number of continuances. When filed in time the character of a petition to contest a primary election is in no wise changed by the failure of the court to act regardless of the reasons for such failure.

5. LIBEL AND SLANDER—*Absolute Privilege—Courts of Limited Jurisdiction.*—Where in an action for libel it is claimed that the publication in question was privileged because made in judicial proceedings, the fact that the court was one of limited jurisdiction was immaterial where all that was done was done under express authority of the statute and done within the limits imposed.

6. JURISDICTION—*Presumption in Favor of Jurisdiction—Inferior or Special Tribunals.*—Where facts essential to give jurisdiction to an inferior or special tribunal of limited authority are shown by the record, the same presumption prevails in favor of its jurisdiction as prevails in favor of the jurisdiction of superior courts of general jurisdiction.

7. LIBEL AND SLANDER—*False and Malicious Statements—Absolute Privilege—Judicial Proceedings—English and American Rules.*—In England publications made in judicial proceedings are absolutely privileged, even though knowingly false and published with express malice. But in America, in order that the defamatory words, published by parties, counsel, or witnesses in the due course of a judicial procedure, may be absolutely privileged, they must be connected with, or relevant or material to, the cause in hand, or subject of inquiry. If they be so published and are so relevant or pertinent to the subject of inquiry, no action will lie therefor, however false or malicious they may in fact be.

8. LIBEL AND SLANDER—*Absolute Privilege—Judicial Proceedings—Relevancy.*—In considering whether allegations in a pleading are pertinent or relevant so as to be privileged within the American rule, courts will give a liberal interpretation of pleadings in favor of relevancy and pertinency.

9. LIBEL AND SLANDER—*Petition in Primary Election Contest—Absolute Privilege—Relevancy and Pertinency—Case at Bar.*—In the instant case, an action for libel, the alleged libelous publication was a petition in a primary election contest. In the petition the petitioners, defendants, charged that plaintiff was a school trustee and also a judge of election, and that he attempted to bribe a voter by offer to give him a contract for the transportation of school children.

*Held:* That for the purpose of determining whether the allegations were relevant the charges must be assumed to be true, and that being so, the charges were pertinent and relevant to the proceeding, and absolutely privileged.

10. LIBEL AND SLANDER—*Privileged Communications—Absolute and Qualified Privileges.*—Privileged communications are of two kinds, those absolutely privileged and those qualifiedly privileged. An absolute privileged communication is one for which an action will not lie, even though the words are published maliciously and with knowledge of their falsity, whereas a qualified privileged communication is one which is *prima facie* privileged only, and in which the privilege may be lost by proof of malice in the publication of the libel or slander.

11. DAMAGES—*Joint-Tort Feasors—Case at Bar.*—In an action against several for a single wrong the verdict should be joint, therefore an instruction in an action for libel against several defendants that the jury might assess damages against the defendants severally and in varying amounts was improper.

12. APPEAL AND ERROR—*Final Judgment by Appellate Court—No Dispute as to Facts.*—Ordinarily when good pleas are rejected and good instructions refused, the appellate court after pointing out the errors will remand the case for a new trial to be had in accordance with the views expressed. But when there is no dispute as to the facts and the issues are in law only, and when they have been fully argued and maturely considered, such procedure is wholly unnecessary, and the appellate court will render final judgment.

Error to a judgment of the Circuit Court of Henrico county, in an action of trespass on the case. Judgment for plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*Leith S. Bremner, Wendenburg & Haddon,* and *L. M. Wickham,* for the plaintiffs in error.

*R. E. Scott* and *W. W. Beverly,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

On August 7, 1923, there was held in Brookland District, Henrico county, a primary election to nomi-

nate a Democratic candidate for supervisor of that district. The candidates were W. Conway Saunders, and H. M. Fleet. This election resulted in a tie vote. Lots were cast, and Saunders was declared the nominee.

On August 20th following a petition was filed under the statute in the circuit court of that county by sixteen qualified voters charging an undue election and a false return, and prayed that an inspection of the ballots be allowed; that a recount be ordered; that Fleet be declared the nominee, and for general relief.

That the setting and context of the offending charges may appear, the material averments of this petition for a recount are set out in a foot note.*

---

*"(b) One A. A. Harvey, a friend and active worker for W. Conway Saunders, was permitted by the said judges to stand at an open window about two and a half feet from the voting booth, and watch the voters mark their ballot, which said booth was so arranged that any person looking out from, or standing at, the window could see the voter in the booth marking the ballot. This arrangement of the voting booth was in violation of section 160 of the Code, which provides that the inside of the booth should be concealed from general observation. Permitting the said Harvey to be within two and one-half feet of the booth and watching voters exercising the right of suffrage was illegal, because section 161 of the Code provides that no person but the elector shall at the same time be within forty feet of the ballot box, and the ballot box was not more than_____ feet from the voting booth.

"(c) Contrary to the law, one C. C. Bowles, registrar, who, also without authority, acted as judge of the election, was allowed to go, and did in a number of occasions go, into the booth and watch electors mark their ballot. Said Bowles was a worker for the said Saunders.

"(d) Contrary to the law, one J. E. Perross, an employee of the said A. A. Harvey, was permitted to sit or be with the judges of the election of said precinct during the voting.

"(e) F. E. Toombs and Mary D. Toombs, legally qualified voters of said Hungary precinct, were refused a right to vote by the judges. Both of them would have voted for H. M. Fleet, who was opposing said Saunders for the nomination for the board of supervisors of the said Brookland District.

"(f) W. Conway Saunders offered to transact certain business for one Clarence Lucas, a voter of said Hungary precinct, without charge, if the said Lucas would vote for the said Saunders for supervisor. This business was in connection with the estate of the deceased wife of the said Lucas.

"(g) The said Clarence Lucas is an illiterate man and when he desired Thomas Friend, acting as judge of election, to mark his ballot, and requested the said Friend to vote him for Fleet, the said Friend said: 'You are scratching a right good man.' Your complainants are advised that it is

To this petition Saunders filed an answer and an amended answer. At the October term of court, and when it was then in session, counsel for litigants met in an attempt to agree upon conditions under which a recount might be had. No conclusion was reached, and upon the failure of their conference plaintiffs' counsel said to the judge then upon the bench that he had nothing to bring before him, and so this proceeding in which the issue had been made up, and which was then upon the docket, was continued in due course and as a matter of course. Nothing further was done until January 11, 1924, when this order was entered:

"January 11, 1924.

"EDWARD J. TIMBERLAKE, *et ux.*, Plaintiffs

    *vs.*

W. C. SAUNDERS, Defendant.

"Contested Election.

"This day came the defendant by his attorney and the plaintiffs being solemnly called, failed to appear

---

contrary to law to attempt, under any such circumstances, to influence a voter.

"(h)   Contrary to law, the judges of the said precinct allowed more than one ballot at a time to be out, there being only one booth, and allowed voters to mark ballots in the booth and out of the booth at the same time.

"(i)   W. M. Walker, a legally qualified voter and resident of said district for more than one year prior to the said election, who would have voted for H. M. Fleet, was illegally refused a right to vote, although legally transferred from South Richmond, Virginia.

"(j)   A. A. Harvey, an active Saunders worker and recognized political lieutenant, offered Edward Toombs five days' pay if he would stop working for Fleet and work for Saunders.

"(k)   W. Conway Saunders offered E. F. Morris to fix the road near his residence and build a school for the community if he would support Saunders.

"(l)   Mrs. Gus Tyree, who cleans the school house near Hungary precinct, was told, with her husband, by W. Conway Saunders and A. A. Harvey, that Mrs. Tyree would lose this work if they should vote for H. M. Fleet.

"(m)   Mrs. B. D. Kay was at first refused a vote, but was allowed to vote afterwards upon her receipts. When obtaining her ballot, she was told by R. E. F. McCann that if she voted for some of the new men, she would be liable to vote for some one blacker than a negro.

and prosecute their suit.   On the defendant's motion it is ordered that this proceeding be dismissed, at 'the cost of the said plaintiffs.''

The instant action was instituted in December, 1923. The declaration contains two counts.   Material averments of the first are that the defendants:

"* * * did compose and publish of and concerning the said plaintiff certain false, scandalous, malicious, defamatory and libelous matter following of and concerning the said plaintiff:

" 'One John L. Ratcliffe (meaning the plaintiff), a judge of election at Lakeside precinct, and a school trustee in Brookland district, Henrico county, an active worker for Saunders (meaning one W. C. Saunders, a candidate for the Democratic nomination as supervisor from Brookland district of the board of supervisors of Henrico county in the Democratic primary held August 7, 1923), made_____

---

"Lakeside Precinct.

"2.   At Lakeside precinct, in Brookland district, the following illegalities occurred and were permitted:

"(a)   W. L. Lawrence and William Yeager acted as judges without any legal authority.   They were both supporters of the said Saunders.

"(b) 'Thos. W. Jones and Jessie L. Jones were both allowed to vote, although they had lived in Henrico county for less than a year, and both voted for the said Saunders.

"(c)   One ——————— Rodgers was approached by W. L. Laurence, an election official, and electioneered to vote for Saunders.   He was unable to read and write and the said Saunders marked his ballot.

"(d)   As many as nine people were allowed at a time within the forty foot limit, and as many as four ballots were out at one time and being marked, although there was only one booth.   More than one voter was permitted to go into the booth at once, and mark ballots in sight of each other.

"(e)   Paul Jones, a county official, and a worker for Saunders, was allowed many times within the forty-foot limit.

"(f)   One J. B. Harris, who was known to wish to vote for H. M. Fleet, was refused permission to vote on the ground that the time had expired when in fact it had not expired.

"(g)   A rubber stamp, intended to be used to vote for A. D. Crutchfield for a member of the Democratic Committee was used by certain voters to obliterate the names of candidates.

"(h)   One John L. Ratcliffe, a judge of election at Lakeside precinct,

Bradshaw, who has a contract for hauling school children in the said district, a proposition to renew his contract without competition if he would vote for the said Saunders (meaning said W. C. Saunders and meaning and thereby charging that the plaintiff would use his said office as school trustee in said Brookland District dishonestly and corruptly).' "

And further:

" 'Complainants (meaning all of the said defendants except J. W. Penick) charge that all of the judges of election except one at Hunton (meaning, amongst others, the plaintiff) were friends and supporters of Saunders, and they further charge that had it not been for the illegal acts and practice (meaning, amongst others, the alleged offer to one _____Bradshaw hereinabove set out) hereinabove set forth, the result of the election would have been different, and a major-

---

and a school trustee in Brookland district, Henrico county, an active worker for Saunders, made ————————— Bradshaw, who has a contract for hauling school children in the said district, a proposition to renew his contract without competition if he would vote for the said Saunders.

"(i)   A. D. Crutchfield, a candidate for the office of Democratic Committeeman in the said primary election, illegally acted as one of the judges of election at this precinct.

"(j)   T. P. Darracott, after marking his ballot and presenting it to be deposited in the box, was asked by W. L. Laurence to write in the name of A. D. Crutchfield for a member of the county Democratic Committee, which he did in the presence of all of the judges of election upon the table on which the ballot box stood.   All of said judges could have observed and may have seen the manner in which his ballot was scratched.

"3.   Complainants charge that upon the counting of the ballots at the said election, the result in several precincts was as follows:

"Hungary precinct—For Saunders, 83; For Fleet, 77.
"Dill's precinct—For Saunders, 37; For Fleet, 7.
"Lakeside precinct—For Saunders, 116; For Fleet, 102.
"Hunton precinct—For Saunders, 52; For Fleet, 36.
"Longdale precinct—For Saunders, 39; For Fleet, 67.
"Brook Hill precinct—For Saunders, 15; For Fleet, 53.

"The vote resulted in a tie.   The election commissioners decided the result by ballot, and declared W. Conway Saunders the nominee of the Democratic party for supervisor for the said Brookland district.

"4.   Complainants charge that all of the judges of election except one at Hunton were friends and supporters of Saunders, and they further charge that had it not been for the illegal acts and practice hereinabove set forth,

ity of the votes would have been cast for H. M. Fleet (meaning one H. M. Fleet, a candidate opposing the said W. C. Saunders for the Democratic nomination as supervisor from Brookland district of the board of supervisors of Henrico county in the Democratic primary held August 7, 1923).' "

The second count was upon the same publication for insulting words under the statute.

There was a demurrer to this declaration and to each count thereof, and three special pleas were tendered. The demurrer was overruled, and the pleas rejected. Thereafter in due course, the matter was submitted to a jury which returned into court this verdict:

"This day came the parties by their attorneys. And came also the jurors sworn for the trial of the issue, in this case according to their adjournment on yesterday. And having fully heard the evidence and arguments of counsel, retired to their room to consult of their verdict. And after some time returned and in open

---

the result of the election would have been different, and a majority of the votes would have been cast for H. M. Fleet.

"5. Complainants charge that had F. E. Toombs and Mary D. Toombs been allowed to vote, as they ought to have been, the majority would have been for H. M. Fleet.

"6. Complainants charge that if T. W. Jones and Jessie L. Jones had been refused the right to vote, as should have been done, H. M. Fleet would have received a majority of the votes.

"7. Complainants charge that upon a recount of the ballots cast in said election in Brookland district, a majority will be found to have been cast for H. M. Fleet.

"8. Complainants pray that an order of court may issue for a recount of said ballots and for an order allowing an inspection of the ballots cast in said district in said election, and of the poll books used therefor, in accordance with section 180 of the Code of Virginia.

"9. Complainants pray that H. M. Fleet be declared the nominee of the Democratic party for the office of supervisor for Brookland district of Henrico county, and that W. Conway Saunders be declared not to be such nominee.

"10. Complainants prays for such other, further, and general relief. as to the court may seem requisite.

"And your complainants will ever pray, etc."

court found the following verdict: 'We, the jury on the issue joined, find for the plaintiff against the following defendants, and assess his damages at the aggregate sum of twenty-two hundred dollars, payable by the following defendants, severally as follows, viz: J. W. Penick, $500.00, by E. J. Timberlake, $500.00; by C. W. Childrey, $500.00; by Dr. H. W. Lewis, $100.00; by E. F. Morris, $100.00; by J. W. Bailey, $100.00; by W. T. Fleming, $100.00; by W. I. Froman, $100.00; by W. D. Wood, $100.00; by L. A. Wood, $100.00; as to the other defendants we find in their favor.'

"(Signed) Geo. W. Warren, Foreman."

The verdict in the form in which it was returned was confirmed by the court and judgment entered.

There are fifteen bills of exception. To examine them in detail would serve no good purpose, and extend beyond reason an opinion which at best cannot be brief.

Counsel for plaintiff has well stated the major issues to be:

"The first and fundamental propositions involved in the assignments of error here, as we understand them, based upon the overruling of the demurrer to the declaration, the rejection of special pleas, numbers 1 and 2, and the refusal of the defendants' instruction number 1, are:

"(a) That the libelous matter complained of was contained in the petition filed in the clerk's office of the circuit court of Henrico county for the purpose of contesting the election held in said county pursuant to the statute on that subject.

"(b) That the preparation, circulation and filing of that paper was a judicial proceeding, and, therefore, all the matter therein contained was absolutely privileged,

and no action can be maintained thereon, however irrelevant the matter in question was, or however maliciously the occasion was availed of."

[1] The contest instituted on August 20, 1923, was neither an action at law nor a suit in equity, but was based upon the statute. Code provision, section 267. In it, and in section 247, it is declared that the rules of law and equity govern, and that the case shall be heard upon its merits. In other words it was the plain purpose of the legislature that such matters should be dealt with in no technical way.

[2] If the petition and the proceedings had thereunder were court proceedings, and if the allegations charged to be libelous were relative or pertinent, then the occasion was one of absolute privilege, and there can be no recovery. The record is large and full of byroads, but when we have determined the nature of the proceedings and if the objectionable charges are relevant or pertinent to its purposes the way is plain, the end inevitable and a case complex upon its face becomes simplicity itself.

Since there is no dispute as to the circumstances under which the offending publication was made, these matters are for the court. Newell on Slander and Libel (4th ed.), sec. 395; *Aylor* v. *Gibbs*, 143 Va. 644, 129 S. E. 696; *Davis* v. *Rodgers*, 139 Va. 618, 124 S. E. 408. Were they judicial? What are judicial proceedings?

[3] In 36 Corpus Juris, 1250, it is said:

"Courts differ as to what constitutes a 'judicial proceeding' within the rule of absolute privilege. Generally the privilege of judicial proceedings is not restricted to trials of civil actions or indictments, but it includes every proceeding before a competent court or magistrate in the due course of law or the administra-

tion of justice which is to result in any determination or action of such court or officer. The rule is broad and comprehensive, including within its scope all proceedings of a judicial nature whether pending in some court of justice, or before a tribunal or officer clothed with judicial or quasi judicial powers. It applies to communications made before tribunals having attributes similar to those of courts. But the rule does not apply to a tribunal which is not judicial or quasi judicial in its character or nature; nor to proceedings which, although official and public, are not in substance judicial."

*Treloar* v. *Harris,* 66 Ind. App. 59, 117 N. E. 975, is a case dealing with an inquisition as to sanity. The court cited with approval this statement of the law from *Martin* v. *Simpkins,* 20 Colo. 438, 38 Pac. 1092:

"That much, however, may be safely said: When a regularly constituted court of justice is clothed with authority to hear and determine a question of fact, or a mixed question of law or fact, upon evidence, written or oral, to be produced before such court, and thereupon to render a decision affecting the material rights or interests of one or more persons or bodies corporate, such proceeding by the court must be regarded as judicial, and the decision by the court may properly be denominated a judgment."

In this Colorado case an annexation proceedings was held to be judicial.

"Judicial proceedings mean any proceeding for the purpose of obtaining such remedy as the law allows." *State* v. *McCafferty,* 25 Okla. 2, 105 Pac. 992, L. R. A. 1915A, 639.

A petition charging the existence of a liquor license to be a nuisance is a judicial proceeding. *Hess* v. *McKee,* 150 Iowa 409, 130 N. W. 375.

So also is an inquiry before a commissioner under

the workmen's compensation act. *Higgins* v. *Coal Company* (W. Va.), 138 S. E. 112.

In *Scanlon* v. *Deuel*, 176 Ind. 208, 94 N. E. 561, a liquor nuisance was the issue. It was held to be a judicial proceeding.

Proceedings before the Interstate Commerce Commission are privileged. *Duncan* v. *Atchison, etc., R. Co.*, 72 Fed. 808, 19 C. C. A. 202.

Extradition proceedings before the Governor of a state are privileged also. *Brown* v. *Globe P. Co.*, 213 Mo. 611, 112 S. W. 462, 127 Am. St. Rep. 627.

[4] Disbarment proceedings and proceedings before military tribunals also are. Note to *Kemper* v. *Fort*, 123 Am. St. Rep. 646; 36 C. J. 1250, note 8. An examination of *Richardson* v. *Farrer, Judge*, 88 Va. 760, 15 S. E. 117, which is an election case, leads us inevitably to conclude that election proceedings in Virginia are so regarded. This conclusion is in harmony with the general law. The authorities quoted, and others that might be, with practical unanimity declare that statutory inquisitions of this character are judicial and entitled to all the privileges that ordinarily attach.

This in judgment had all of the necessary characteristics. There was a petition, and an issue thereon made by answer. It either went, or should have gone, upon the court's docket in due course. Provision is made for its decision either by the judge in vacation, or by the court in term, and it is said that "unless good cause be shown for a continuance, the court, at the next term, shall proceed to determine the contest without a jury."

The nature of the action is fixed by statute, and it is not changed by the failure of the court to act at its next term or by any number of continuances. It must remain upon the docket until final judgment, just as other actions must. If the instant case, which was

brought before final judgment on the election petition, can be maintained at all, it could have been instituted the day after that petition was filed as well as at any later time.

Section 2237 of the Code deals with redresses for erroneous assessments of taxes, and declares that a person who is aggrieved may file a petition for redress in the clerk's office, and that the court at its next term after the filing of said petition, shall hear it and enter judgment. Can it be contended that the failure of the court to enter judgment at its next term would dismiss the petition, and leave the applicant without redress? To state this proposition is to answer it. Nothing in conflict with the views here expressed is held in *Leesburg* v. *Loudoun Nat. Bank*, 141 Va. 244, 126 S. E. 196, or in *Commonwealth* v. *Deford*, 137 Va. 551, 120 S. E. 281. They simply hold that when the statute declares that a proceeding shall be begun within a certain time, it must be begun within that time, and is a nullity if instituted later. A petition to correct an erroneous assessment which must be filed within two years from the first day of September of the year in which the assessment was made, cannot be filed within three years from that date. In such circumstances it would not be a judicial proceeding at all, and would be entitled to no immunity as such. The petition of August 20th was by statute to be filed within fifteen days from the date of election if filed at all. Had it been filed twenty days thereafter it would have stood exactly upon the footing of a petition to correct an erroneous assessment of taxes filed too late, but when filed in time its character was in no wise changed by the failure of the court to act regardless of the reasons for such failure. If it was over a court paper, it continued to be such.

[5] It is urged in this connection that the court was one of limited jurisdiction; granting this to be true it is not a matter of first importance.   Those who apply to court for relief or witnesses who detail their version of the facts seldom pause to ponder the jurisdiction of the court.

"It is difficult to conceive how the question of the competency of the court to entertain or try the charge or defense can be made the subject of consideration, nor, in our judgment, ought any witness or other person, acting in good faith, be required to determine, at his peril, whether the tribunal to which it complained, or in which he gave testimony, actually had jurisdiction to determine the matters involved in the pleading or evidence."   Note, 123 Am. St. Rep. 642.

Here all that was done was done under express authority of the statute and done within the limits imposed and it is of little moment if the jurisdiction be circumscribed or general.

[6] "It is well settled that, where facts essential to give jurisdiction to an inferior or special tribunal of limited authority are shown by the record, the same presumption prevails in favor of its jurisdiction as prevails in favor of the jurisdiction of superior courts of general jurisdiction."   *Berry* v. *Smith*, 148 Va. 424, 139 S. E. 252.

[7] What measure of immunity does such publication have?   In England it is absolute, even though knowingly false and published with express malice.   Newell on Slander and Libel (4th ed.), sections 350 and 358.

The same author at section 359 states this qualification thereto as the American rule.   To be privileged they must be material or pertinent to the issue.   The leading authority in support of this new rule is *Hoar* v. *Wood*, 3 Metc. (Mass.) 193 (1841), where it is said:

"Still this privilege must be restrained by some limit, and we consider that limit to be this: That a party or counsel shall not avail himself of his situation to gratify his private malice by uttering slanderous expressions either against a party, witness, or third person which has no relation to the cause or subject-matter of the inquiry. Subject to this restriction, it is on the whole for the public interest, and best calculated to subserve the purpose of justice, to allow counsel full freedom of speech in conducting their causes and advocating and sustaining the rights of their constitutents. This freedom of discussion ought not to be impaired by numerous and refined distinctions."

In *Myers* v. *Hodges*, 53 Fla. 197, 44 So. 357, the court said:

"In the United States, according to the overwhelming weight of authority, in order that the defamatory words, published by parties, counsel, or witnesses in the due course of a judicial procedure, may be absolutely privileged, they must be connected with, or relevant or material to, the cause in hand, or subject of inquiry. If they be so published and are so relevant or pertinent to the subject of inquiry, no action will lie therefor, however false or malicious they may in fact be."

These matters have been dealt with by our own court. Judge Keith, in *Williams Printing Company* v. *Saunders*, 113 Va. 156, 73 S. E. 472, Ann. Cas. 1913E, 693, observed:

"Privileged communications are of four classes: 1st, where the author or publisher of the alleged slander acted in the *bona fide* discharge of a public or private duty, legal or moral, or in the prosecution of his own rights or interests; 2d, anything said or written by a master in giving the character of a servant who has been in his employment; 3d, words used in the course

of a legal or judicial proceeding, however hard they may bear upon the party of whom they are used; 4th, publications duly made in the ordinary mode of parliamentary proceedings.

"The privilege may constitute a bar to an action—for instance, words used in the course of a legal or judicial proceeding."

Judge West had occasion to pass upon this question in the recent case of *Lightner* v. *Osborn*, 142 Va. 19, 127 S. E. 314, where he said:

"Lightner's statements while testifying in the chancery suit were privileged only in so far as they were pertinent and material to the issue raised therein."

In Newell on Slander and Libel (2d ed.) 424, paragraph 27, this is said:

"And the same doctrine is generally held in the American courts, with the qualification as to parties, counsel and witnesses, that their statements made in the course of an action must be *pertinent* and *material* to the case. The qualification of the English rule is adopted in order that the protection given to individuals in the interest of an efficient administration of justice may not be abused as a cloak from beneath which to gratify private malice."

[8] By what rule do courts measure the character of the charges? Are they liberal in their admission, or are they alert to curtail their privilege?

One of the latest cases on that subject is *Bussewitz* v. *Teachers' Asso.*, 188 Wis. 121, 205 N. W. 808, 42 A. L. R. 873:

"In considering whether allegations in a pleading are pertinent or relevant, it does not follow that the same tests are to be applied as on motions to strike out averments as irrelevant. Although most of the American courts do not follow the English rule, there seems

good reason for a liberal interpretation of pleadings in actions of this kind, when the question of relevancy is involved and such a course is based on good authority. In Pennsylvania it is held that all doubts should be resolved in favor of relevancy. *Kemper* v. *Fort*, 219 Pa. St. 85, 67 Atl. 991, 13 L. R. A. (N. S.) 820, 123 Am. St. Rep. 623, 12 Ann. Cas. 1022. In Minnesota the court applies the test: 'Was the allegation so palpably wanting in relation to the subject matter of the controversy that no reasonable man could doubt its irrelevancy and impropriety?' *Burgess* v. *Turtle & Co.*, 155 Minn. 479, 193 N. W. 945; *Rolfe* v. *Noyes Bros. & Cutler, Inc.*, 157 Minn. 443, 196 N. W. 481. In Nebraska it is held that on such an inquiry all doubts should be resolved in favor of relevancy and pertinency. *Simon* v. *London G. & A. Co.*, 104 Neb. 524, 177 N. W. 824, 16 A. L. R. 743. In a New York case it was held that if the allegation could possibly be pertinent or material the privilege is absolute. *Chapman* v. *Dick*, 197 App. Div. 551, 188 N. Y. Supp. 861. See, also, *Carpenter* v. *Grimes P. P. M. Co.*, 19 Idaho, 384, 114 Pac. 42; *Ash* v. *Zwietusch*, 159 Ill. 455, 42 N. E. 854; *Gosewisch* v. *Doran*, 161 Cal. 511, 119, Pac. 656, Ann. Cas. 1913D, 442."

In *Myers* v. *Hodges, supra*, the court said:

"Much allowance should be made for the earnest though mistaken zeal of the litigant who seeks to redress his wrong, and for the ardent and excited feeling of the fearless and conscientious lawyer, who must have necessarily made his client's cause his own."

In *Union Mut. Insurance Co.* v. *Thomas* (Circuit Court of Appeals), 83 Fed. 804, it was said:

"It is perhaps not necessary that it be in all cases material to the issues presented by the pleadings, but it must be legitimately related thereto or so pertinent

to the subject of the controversy that it may, in the course of the trial, become the subject of inquiry."

In a note to 16 A. L. R. 743, is this statement of the rule:

"As to the degree of relevancy or pertinency necessary to bring the alleged defamatory matter within the privilege, the courts favor a liberal rule. Thus, the matter to which the privilege does not extend must be so palpably wanting in relation to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety."

[9] In the light of the foregoing statements of the law were the offending charges material, relevant or pertinent to the relief that might have been legitimately sought under the petition into which they were incorporated? We think they were. They were pertinent as a primary proposition and our judgment here is fortified by the fact that they must be so construed whenever the matter is in doubt. Public policy demands that within all reasonable limits a litigant should have the right to state his case as he sees it.

The election returns, upon their face, showed that there was a tie vote. Petitioners charge that Mr. Ratcliffe was a school trustee. As such he was in a position of influence when contracts for the transportation of children were to be placed. It is also said that he was a judge of election, and that he attempted to bribe a voter by offer to give him a contract for this transportation if he would vote for Saunders. Improper conduct was also charged against other judges of election. If these facts were to be established, no trial judge would decline to order a recount. This much seems once to have been conceded. At the conference of counsel in October the substantive right to a recount was not questioned. Their differences

dealt only with matters of procedure, and rules to be followed when it was had, though of course other matters than the alleged misconduct of Ratcliffe were doubtless also in mind. It is not easy to imagine a circumstance which would place returns under greater suspicion than to show that the judge who made them had been attempting to bribe the voters. One who would bribe a voter would falsify a count. The least that a court could do would be to verify it by a recount. If corruption on the part of judges of election in connection with their official duties is not relevant to an investigation and recount, what would be?

For the purposes of relevancy we must assume the charges of corruption to be true, however false they may have been in fact. The law of the case is not changed by the facts that these charges are in reality false, and that Mr. Ratcliffe is an upright gentleman, nor by the further facts that they were made maliciously and with full knowledge of their untruthfulness, if such was the case.

[10] In *Spencer* v. *Looney*, 116 Va. 767, 82 S. E. 745, the court said:

"Privileged communications are of two kinds, those absolutely privileged and those qualifiedly privileged. An absolute privileged communication is one for which an action will not lie, even though the words' are published maliciously and with knowledge of their falsity, whereas a qualified privileged communication is one which is *prima facie* privileged only, and in which the privilege may be lost by proof of malice in the publication of the libel or slander."

In the recent West Virginia case of *Higgins* v. *Coal Co.*, 103 W. Va. 504, 138 S. E. 112, a West Virginia case decided April 26, 1927, the court said:

"The statements in the letter were relevant to these

subjects. Being relevant, the letter was absolutely privileged, and its status is not changed by falsity or maliciousness of its statements. It is settled law that the test of a privileged statement is not its truth or good faith, but its relevancy."

This is an unbroken rule.

We, therefore, reach the conclusion that plea No. 1, which attempted to set up the circumstances in which the alleged libel was published, and to claim absolute privilege by reason of such circumstances, should have been received. And for like reason instruction No. 1 tendered on behalf of the defendants, and rejected by the court, which told the jury that the occasion of the publication was privileged, should have been given.

[11] The only other assignment of error of any special interest grows out of instruction VI-A which told the jury that they might assess damages against the defendants severally and in varying amounts. It is a very sensible rule and if the matter were one of first impression it should be followed, but such is not the law. See Burks' Pleading and Practice, page 531; *Crawford v. Morris*, 5 Gratt. (46 Va) 90, and *Kelly v. Schneller*, 148 Va. 573, 139 S. E. 275. Were this the only error, we would be inclined to treat it as harmless, but it does violate settled rules, and these rules as a general proposition should be followed until changed by the legislature.

Other assignments of error contain no novel propositions and will not be discussed.

We are of opinion:

1. That the contest begun by the petition of August 20, 1923, was a judicial proceeding.

2. That the court had jurisdiction to hear and determine it.

3. That the offending charges were relevant to the relief sought.

4. And as such absolutely privileged.

[12] Ordinarily when good pleas are rejected and good instructions refused, the appellate court, after pointing out the errors, will remand the case for a new trial to be had in accordance with the views expressed. But when there is no dispute as to the facts and the issues are in law only, and when, as here, they have been fully argued and maturely considered, such procedure is wholly unnecessary.

The judgment complained of is reversed and the action dismissed.

*Reversed.*