# CIRCUIT COURT OF LOUDOUN COUNTY

Deanne D. Hubbard et al.

v.

Jack J. Goehring, III,
and Mary Kirk Goehring

November 1, 2012

Case No. CL00072386

By Judge Thomas D. Horne

This matter came before the Court on October 4, 2012, for a hearing on defendants' pleas in bar addressed to the application of the affirmative defense of judicial immunity. This is a defamation action; the immunity claim concerns statements made to the public prosecutor and police regarding criminal activity allegedly committed by plaintiff Deanne Hubbard. The complaint was filed by Deanne Hubbard, her children, Jay Hubbard and Lisa Patterson, and their spouses, Megan Hubbard and Thomas Patterson, alleging malicious prosecution and defamation. The instant defamation claims are the subject of the pleas in bar. The court has previously addressed other pre-trial proceedings in the case.

In her complaint, Ms. Hubbard states that she was an employee of the defendants, Jack and Mary Goehring, acting as a manager for their rental properties. In addition to acting as a manager, Ms. Hubbard, her children, and their spouses were occupants of commercial and residential properties, over which she was acting as a manager for the Goehrings. Complainants suggest that Mr. Goehring, on his own and acting as an agent for his wife, filed a criminal theft affidavit alleging identity theft, fraud, embezzlement, and/or bank fraud. Defendants Jack Goehring, III, and Mary Kirk

Goehring met with State Police and asked to have fraud added to the list of charges against the plaintiff Deanne Hubbard and wrote to the Assistant Commonwealth Attorney (ACA) twice informing him of their intent to file civil charges and later making statements labeling plaintiff Deanne Hubbard as a thief and alleging theft of $122,000. Defendants made several other statements to the ACA of a similar theme.

Ms. Hubbard also alleges that Mr. Goehring received information from the Middleburg Police Chief regarding the time and place of plaintiff Deanne Hubbard's arrest and arranged for a photographer friend to photograph the arrest. Mr. Goehring assisted his friend in securing a local press buyer for the photographs. The photographs of the plaintiff Deanne Hubbard in handcuffs and of her arrest were subsequently published on the front page of a local newspaper, on NBC Evening News, Channel 4, and YouTube. Plaintiffs also allege that the defendant Jack Goehring, III, acting on his own and on behalf of his wife Mary Kirk Goehring, made defamatory comments that, if proven, would be libelous *per se* and for which they are entitled to recover damages. Ms. Hubbard was acquitted of all embezzlement charges.

### *Restatement (Second) of Torts; Judicial Immunity*

Section 586 of the *Restatement of Torts* states that, "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Restatement (Second) of Torts* § 586 (1977). Comment a states that the purpose of the privilege is to secure to attorneys, in their position as officers of the court, freedom to secure justice for their clients. *Restatement (Second) of Torts* § 586, cmt. a (1977). Although case law has extended the definition of attorney to include other judicial officers, the underlying rational here is to protect the ability of officers of the law to carry out their duties.

Section 587 of the *Second Restatement of Torts* states that, "a party to private litigation, or a defendant or private prosecutor in a criminal prosecution is privileged to publish any statement pertinent to the proposed judicial proceeding prior to or during the course of the proceeding." *Restatement (Second) of Torts* § 587 (1977). Comment a of section 587 states the privilege is based on the policy that all people should have complete access to courts of justice to settle their private disputes. *Restatement (Second) of Torts* § 587, cmt. a (1977).

### *Restatement (Second) of Torts; Good Faith*

Comment e of Sections 586 and 587 of the *Restatement (Second) of Torts* continues, "As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the

communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." *Restatement (Second) of Torts* § 586, cmt. e (1977); *Restatement (Second) of Torts* § 587, cmt. e (1977). Hence, policy requires a good faith to cover the speech under judicial immunity. This good faith appears to have two separate purposes that must be fulfilled. Firstly, the speech must in good faith be in connection to the proposed litigation. Secondly, a private individual, making a report to the police, must make a report of alleged criminal activity in good faith. Comment b of the 587 states that a "private prosecutor, formally initiates a criminal action or applies for a search warrant by a written complaint under oath, made to the proper officer, charging another with crime." *Restatement (Second) of Torts* § 58, cmt. b (1977). The formality requirements, such as filing a complaint under oath, imply a good faith requirement on the part of the private individual bringing the charges and throughout the prosecution. If believed, many of the statements go beyond relevant material for a criminal complaint. Mr. Goehring secured a photographer friend to photograph the plaintiff's arrest in handcuffs. He subsequently assisted his friend in securing a local press buyer which lead to the photos being published on the front page of a local news paper.

### Relevance to Judicial Proceeding

In *Penick v. Radcliffe*, the seminal decision on judicial immunity in Virginia, the court stated that "for absolute judicial immunity to attach, the communication must be "material, relevant, or pertinent" to the judicial process." *Mansfield v. Bernabei*, 284 Va. 116, 125 (2012) (quoting *Penick v. Radcliffe*, 149 Va. 618, 635 (1927)). In *Mansfield v. Bernabei*, the Court stated that this requirement can be applied by a reviewing court's examination of whether (1) the statement was made preliminary to a proposed proceeding (2) the statement was related to a proceeding contemplated in good faith and under serious consideration and (3) the communication was disclosed to interested persons. *Mansfield v. Bernabei*, 284 Va. 116, 125 (2012).

One treatise writer has noted that an individual complainant becomes entitled to judicial immunity when he takes the "first step" in the judicial proceeding by making an informal complaint to the prosecuting attorney. Prosser and Keeton, *The Law of Torts*, 114 (5th ed. 1948). Furthermore, the intent or motive of the defendant is not a bar to the defense. While the claim of privilege may be overcome by a showing of "bad faith" on the part of the prosecutor, the bad faith necessary is an absence of a reasonable relationship to the subject matter of the complaint.

Earlier this year, the Supreme Court of Virginia, in the *Mansfield* decision, again considered absolute judicial immunity and found that the

immunity can extend to the time leading up to the actual filing of a formal complaint. Last year, in the *Lewis v. Kei* decision, the Supreme Court of Virginia, in a case regarding statements leading to an arrest, the Court failed to address judicial immunity. Neither case indicates that the Court has moved away from the definition of "judicial proceeding," incorporated in Virginia since *Penick v. Radcliffe* in 1927.

> Courts differ as to what constitutes a "judicial proceeding" within the rule of absolute privilege. Generally, the privilege of judicial proceedings is not restricted to trials of civil actions or indictments, but it includes every proceeding before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action of such court or officer. The rule is broad and comprehensive, including within its scope all proceedings of a judicial nature whether pending in some court of justice or before a tribunal or officer clothed with judicial or quasi judicial powers. It applies to communications made before tribunals having attributes similar to those of courts. But the rule does not apply to a tribunal which is not judicial or quasi judicial in its character or nature nor to proceedings which, although official and public, are not in substance judicial.

*Penick v. Radcliffe*, 149 Va. 618, 627-28 (1927) (citing 36 *Corpus Juris* 1250).

### *Mansfield v. Bernabei Extension of the Privilege to the Pre-Filing Stage*

Defendants cite *Mansfield v. Bernabei* to argue that their statements to law enforcement officers were covered by judicial immunity. *Mansfield v. Bernabei*, 284 Va. 116 (2012). In *Mansfield*, the Court held that the judicial privilege extends to statements in a draft complaint, which had been distributed for settlement purposes before the filing of the underlying action. *Id*. The Court considered the absolute judicial immunity adopted by a string of cases in the Commonwealth of Virginia and extended the privilege to the pre-filing state of litigation. *Id*.

The defense argues that *Mansfield* extends a judicial privilege to their communications with law enforcement officers because *Mansfield* was the first time Virginia considered that the privilege extends to prospective litigation. Moreover, defendants argue that *Mansfield* overturns the *Lewis v. Kei* decision where a plaintiff falsely accused of criminal behavior brought a defamation suit. *Lewis v. Kei*, 281 Va. 715 (2011). The *Lewis* Court overturned the lower court's judgment sustaining demurrers defending against the defamation charges and remanded for a jury trial on the defamation claims. *Id*.

While the *Mansfield* decision post dates the *Lewis* decision, it does not overrule the *Lewis* decision. As the court states in *Mansfield*, the doctrine of judicial immunity is long established in the Commonwealth of Virginia, far predating the 2011 *Lewis* decision. The *Mansfield* Court states "[i]t is well settled that 'words spoken or written in a judicial proceeding that are relevant and pertinent to the matter under inquiry are absolutely privileged' against actions on the basis of defamation." *Mansfield*, 284 Va. at 121, citing *Donohoe Constr. Co. v. Mount Vernon Associates*, 235 Va. 531 (1988) (quoting *Darnell v. Davis*, 190 Va. 701 (1950)). The court further noted that judicial immunity in Virginia dates back to the 1927 decision in *Penick v. Radcliff*, 149 Va. 618 (1927). The *Mansfield* decision merely extended the time frame during which statements are protected by judicial immunity to include the pre-filing stage of litigation. The statements made by the defendants in the case at hand far predated the pre-filing stage of litigation.

The *Lewis* Court did not consider judicial immunity as an affirmative defense. *Lewis*, 281 Va. 715. In *Lewis v. Kei*, a minor child asked the plaintiff for a ride. *Id.* at 720. A third party approached the truck and ordered the child out. The plaintiff tried to explain the situation and left. The third party called 911 and reported an attempted abduction. The media then reported that the police were on the hunt for the plaintiff. The plaintiff was captured and held for forty-one days and until the plaintiff's attorney was able to request the Assistant Commonwealth's Attorney to speak with the minor child, who verified the plaintiff's account. *Id.* at 721. The Supreme Court of Virginia reversed the lower court's judgment sustaining demurrers on the defamation claim and remanded the case for further proceedings consistent with their view that the amended complaint was adequate to state a claim upon which the plaintiff could assert a claim for defamation. *Id.* at 727. The Court considered that "a jury could reasonably find that Kei was negligent in making these statements based solely upon Williams' 911 report without conducting any follow-up investigation." *Id.* at 726. The Court, in a footnote, observed that the trial court did not address the issue of sovereign immunity and, therefore, the Court expressed no opinion on the issue. Moreover, the *Lewis* court cites *Parson v. Carroll*, where the court held that, even when a plaintiff has been charged, enters a plea of no contest, and is sentenced, a defamation action can be maintained. *Parson v. Carroll*, 272 Va. 560 (2006).

In summary, the defendants have, by way of the instant pleas in bar, raised the defense of judicial immunity to the defamation claims of the plaintiffs. The many alleged false and defamatory statements about the plaintiffs were made to a variety of individuals in various contexts, some of which may be subject to good faith limitations applicable to the privilege and some that may not be so limited by the issue of relevancy to the ongoing criminal investigation and prosecution. The Court will not on the instant plea parse out those statements that are from those that are not. However,

following discovery in the case, the defendants may raise again the issue of privilege by way of a further special plea directed to the specific statements at issue, motion in limine, jury instruction, or objections at trial.

Accordingly, the Court will overrule the plea in bar to the defamation claim, subject to the further order of the Court.