PRESENT: All the Justices

GIVAGO GROWTH, LLC, ET AL.

v. Record No. 201267

OPINION BY
JUSTICE WILLIAM C. MIMS
OCTOBER 14, 2021

ITECH AG, LLC, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David Bernhard, Judge

In this appeal, we consider whether the Circuit Court of Fairfax County erred in

sustaining the appellees' demurrers based on the defense of absolute privilege.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

On October 7, 2017, Contanza Valdez and Givago Growth, LCC (the "petitioners")

entered into a partnership agreement with Artifact, LCC ("Artifact") and two other individuals.

Under the agreement, each party would contribute a specific amount to the development of land

located at 1409 Cola Drive in McLean, which the parties intended to sell in the future. Each

party would then receive a percentage of the proceeds proportionate to its initial contribution.

The petitioners were to retain title to the property until the sale occurred.[1]

Artifact was a residential construction company owned by Felipe Valdes. To acquire the

capital needed to fund their contribution to the 1409 Cola Partnership, Artifact and Valdes

borrowed $400,000 from iTech AG, LLC ("iTech"). Several months later, Artifact and Valdes

defaulted on the iTech loan. Artifact and iTech then entered into a joint venture agreement

regarding the 1409 Cola Drive property. The agreement stated that Artifact would provide a

---

[1] The partnership agreement also provided, "The parties intend this Agreement to benefit only themselves and any persons that become their successors and assignees. The Agreement is expressly not intended for the benefit of any creditor of any of the LLCs or of any creditor of a Member or for the benefit of any other person who is not a party to the Agreement."

collateral deed of trust on the McLean property to secure iTech's contribution. The petitioners were not a party to this agreement and did not become aware of it until later.

In July 2018, Valdes met with iTech's attorney, Seth Robbins of Robbins Law Group, PLLC ("Robbins Law Group"), to discuss the default and options for repayment of the loan. Valdes told Robbins that he could not provide iTech with the collateral deed of trust that he had promised in the joint venture agreement because the petitioners owned the 1409 Cola Drive property. He therefore assigned any proceeds he would receive from the sale of the 1409 Cola Drive property to iTech.

In September 2018, iTech filed a complaint in the Circuit Court of Fairfax County against the petitioners, asserting a claim for specific performance of the joint venture agreement between Artifact, Valdes, and iTech. It demanded that the petitioners provide a secured interest in the McLean property by way of a deed of trust to iTech. Robbins also filed a *lis pendens* in the land records of Fairfax County with respect to the McLean property on behalf of iTech.

When the *lis pendens* was filed, the McLean property was already under contract for sale. The purchasers refused to close on the property due to the *lis pendens*. The petitioners requested that iTech withdraw the *lis pendens* to facilitate the closing of the pending sales contract. iTech refused and asked petitioners to settle Valdes's debt. In December 2018, the manager of iTech sent Valdes a text message threatening to sue him for fraud unless the debt was repaid. The message also stated, "The best path forward is for [the petitioners] to agree on the Deed of Trust and this all goes away."

In January 2019, the sales contract on the McLean property closed. However, $812,668.90 of the proceeds of the sale were held in escrow due to the pending litigation. In August 2019, iTech nonsuited its complaint and withdrew the *lis pendens*. The petitioners then

filed a complaint against iTech and Robbins Law Group, alleging malicious abuse of process, slander of title, tortious interference with contractual relations, and civil conspiracy, all arising out of the filing of the *lis pendens*.

iTech and Robbins Law Group filed demurrers to the petitioners' complaint, arguing that the filing of a *lis pendens* is entitled to absolute privilege. They also contended that the complaint did not plead valid claims for slander of title, tortious interference with contractual relations, or civil conspiracy. The circuit court sustained the demurrers on the basis that the information contained in a memorandum of *lis pendens* is subject to absolute privilege.

The court granted leave to amend and the petitioners filed an amended complaint, to which iTech and Robbins Law Group demurred again. The circuit court sustained the demurrers and dismissed the amended complaint with prejudice, again holding that the doctrine of absolute privilege applied to the filing of a *lis pendens*.

We awarded petitioners this appeal.

## II. ANALYSIS

This Court reviews a circuit court's decision to sustain a demurrer de novo. *Squire v. Virginia Hous. Dev. Auth.*, 287 Va. 507, 514 (2014). A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true. *Mansfield v. Bernabei*, 284 Va. 116, 120-21 (2012).

As an initial matter, affirmative defenses "may not be raised in a demurrer, which tests only the facial validity of the allegations in a complaint rather than the validity of affirmative defenses." *A.H. ex rel. C.H. v. Church of God in Christ, Inc.,* 297 Va. 604, 638 n.23 (2019) (citing *Duggin v. Adams*, 234 Va. 221, 229 (1987)). Absolute privilege is an affirmative defense. *Isle of Wight County v. Nogeic*, 281 Va. 140, 155 (2011); *see also* Restatement (Second) of Torts

3

§ 613(2) ("In an action for defamation the defendant has the burden of proving, when the issue is properly raised, the presence of the circumstances for the existence of a privilege to publish the defamatory communication."). The circuit court therefore erred in sustaining the appellees' demurrer based on the affirmative defense of absolute privilege.

Turning to the merits, this Court has long recognized that "words spoken or written in a judicial proceeding *that are relevant and pertinent to the matter under inquiry* are absolutely privileged" from subsequent charges of defamation. *Lindeman v. Lesnick*, 268 Va. 532, 538 (2004) (emphasis added). As the italicized text clearly states, what is labelled "absolute" privilege in fact contains an important exception that we will return to later.

The rule of absolute privilege "is broad and comprehensive, including within its scope all proceedings of a judicial nature whether pending in some court of justice, or before a tribunal or officer clothed with judicial or quasi-judicial powers," and includes "any proceeding for the purpose of obtaining such remedy as the law allows." *Penick v. Ratcliffe*, 149 Va. 618, 627-28 (1927). The purpose underlying the absolute privilege is that "the public interest is best served when individuals who participate in lawsuits are allowed to conduct the proceeding with freedom to speak fully on the issues relating to the controversy." *Watt v. McKelvie*, 219 Va. 645, 651 (1978). *See also Donohoe Construction Company v. Mt. Vernon Associates*, 235 Va. 531, 539 (1988) ("Public policy demands that within all reasonable limits a litigant should have the right to state his case as he sees fit.").

Whether the filing of a *lis pendens* is part of a judicial proceeding for purposes of establishing absolute privilege against a defamation claim is a question of first impression for this Court. As our sister court in Kentucky aptly summarized, there are several reasons to apply the absolute privilege to the filing of a *lis pendens*:

4

1) With few exceptions, any publication in a judicial proceeding enjoys absolute privilege from later charges of defamation.
2) The sole purpose of recording a notice of *lis pendens* is to give prospective buyers constructive notice of the pendency of the proceedings.
3) The notice of *lis pendens* is purely incidental to the action wherein it is filed, and refers specifically to such action and has no existence apart from that action.
4) The recording of a notice of *lis pendens* is in effect a republication of the proceedings in the action and therefore, it is accorded the same absolute privilege as any other publication incident to the action.

*Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 237 (Ky. 2013).

Additionally, we have previously held that the filing of a mechanic's lien is subject to a privilege, explaining that the filing is "a prerequisite to a suit to enforce" the lien. That holding informs our analysis today. *Donohoe*, 235 Va. at 539. In *Donohoe*, the Court wrote, "For a claimant to obtain the remedy provided by statute, he must *perfect* his lien and, thereafter, sue to *enforce* it. The two proceedings are inseparable." *Id*. A *lis pendens* is similarly intertwined with the filing of a complaint. While not necessary to institute a case, it provides notice of the pending lawsuit to parties who may be interested in the property underlying the suit. Moreover, a *lis pendens* merely republishes the key information from the complaint. It would therefore be incongruous to extend the privilege to a complaint but not to its associated *lis pendens* when confronted with the allegation that it has slandered a title.

However, the circuit court went further and held that the defense of absolute privilege applies to all four causes of action alleged in the petitioners' complaint: slander of title, malicious abuse of process,[2] tortious interference with contractual relations, and civil conspiracy. This Court

---

[2]This Court has previously recognized, and has recently reaffirmed, that while "malicious prosecution and abuse of process . . . a[re] 'kindred' causes of action," they have different elements, and are subject to separate analyses. *Eubank v. Thomas*, 861 S.E.2d 397, 403 (2021) (citing cases). While the amended complaint in this case appears to conflate the two, it is not

5

has never extended this defense to non-defamation torts, such as the latter three listed above, and we decline the invitation to do so today.

Furthermore, this Court's decision in *Donohoe* has previously considered whether the trial court erred in entering judgment for the defendants on claims of slander of title and abuse of process arising from the filing of an invalid mechanic's lien. The Court determined that absolute privilege barred recovery only on the plaintiff's slander of title claim. *Id*. at 539. It did not apply the doctrine to the abuse of process claim. Rather, it held that there was insufficient evidence to support the jury's finding of malicious abuse of legal process. *Id*. at 539. Today, we confirm what the *Donohoe* Court's reasoning implied. Absolute privilege does not apply to non-defamation torts in Virginia, specifically including malicious abuse of process, tortious interference with contractual relations, and civil conspiracy.

The question remains whether the information contained in the *lis pendens* was sufficiently "relevant and pertinent to the matter under inquiry" for absolute privilege to apply in this case, an inquiry that is necessary in all defamation torts. *Lindeman*, 268 Va. at 538. We are called upon to examine it today for the first time in this context. "As to the degree of relevancy or pertinency necessary to bring the alleged defamatory matter within the privilege, the courts favor a liberal rule. Thus, the matter to which the privilege does not extend must be so palpably wanting in relation to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety." *Penick,* 149 Va. at 635. The purpose of the relevancy requirement is to ensure that the privilege "may not be abused as a cloak from beneath which to gratify private malice." *Id*. at 633.

---

necessary in the present case to address the hybrid claim apparently pled here in resolving the absolute privilege issue.

For purposes of this particular controversy, the point of the inquiry can be sharpened. "Do the facts alleged in the complaint bear any relation to the title of the property encumbered by the *lis pendens*?"

Whether the *lis pendens* here was "so palpably wanting in relation to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety" is a fact-driven inquiry that must be resolved by the trial court. However, we note that the facts alleged in the complaint, if proven true, are concerning and may not satisfy even this "liberal rule" regarding relevancy.

## III. CONCLUSION

For the reasons set forth above, we hold that the Circuit Court of Fairfax County erred in sustaining the appellees' demurrers. We therefore reverse its judgment and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*